BOARD OF TRUSTEES OF THE POLICEMEN AND FIREMEN
RETIREMENT SYSTEM OF THE CITY OF DETROIT v
CITY OF DETROIT

Docket No. 263144. Submitted November 15, 2005, at Detroit. Decided
February 28, 2006, at 9:00 a.m. Leave to appeal sought.

The Board of Trustees of the Policemen and Firemen Retirement
System of the City of Detroit brought an action in the Wayne
Circuit Court against the city of Detroit, seeking a declaration that
the board has the statutory right to set the amortization period by
which the city is to reduce its unfunded pension obligations. On
cross-motions for summary disposition, the court, Kathleen Mac-
donald, J., granted summary disposition for the city, allowing it to
determine the amortization period pursuant to a city ordinance.
The board appealed.

The Court of Appeals *held*:

MCL 38.1140m authorizes the board to determine the city's
annual payment into the retirement system, which payment may
include a portion of an unfunded liability that is amortized over a
period determined by the board. Detroit City Code, § 54-2-6(c)
provides for a 20-year amortization period for unfunded pension
liabilities. Where an ordinance conflicts with a statute, as in this
case, the statute preempts the ordinance.

Reversed.

MUNICIPAL CORPORATIONS — RETIREMENT SYSTEMS — UNFUNDED OBLIGATIONS —
AMORTIZATION PERIODS.

A municipal retirement system board of trustees is statutorily
required to set the period over which the municipality is to
amortize any unfunded liability; a municipal ordinance that sets a
different amortization period is preempted by the statute (MCL
38.1140m).

*Martens, Ice, Klass, Legghio & Israel, P.C.* (by *Christopher P. Legghio* and *Michael J. Bommarito*), for the plaintiff.

*Bruce A. Campbell* for the defendant.

Before: WHITBECK, C.J., and SAAD and O'CONNELL, JJ.

SAAD, J. Plaintiff, Board of Trustees of the Policemen and Firemen Retirement System of the City of Detroit (Board), appeals the trial court's grant of summary disposition to defendant, city of Detroit. We reverse.

I. FACTS AND PROCEDURAL HISTORY

The Board is responsible for the general administration, management, and operation of the Policemen and Firemen Retirement System, which provides retirement and death benefits to active and retired uniformed city employees, their families, and beneficiaries. According to the Board's complaint, the retirement system currently provides benefits to nearly 14,000 Detroit employees and retirees and has assets of approximately $3 billion. Several Detroit officials and employees sit on the Board, including the mayor or his representative, a city council member, the city treasurer, the police chief, the fire commissioner, three firefighters, and three police officers.

Part of the Board's responsibilities is to ensure that the retirement system is properly funded. Accordingly, the Board, after consultation with an actuary, determines the amount of Detroit's annual pension contribution. The plan actuary calculates plan assets and liabilities to determine whether the plan is overfunded or underfunded. The annual contribution Detroit must make to the plan includes present service cost, plus a credit or additional payment depending on whether the plan is overfunded or underfunded.

The 2004 plan was underfunded and, therefore, one component of the pension contribution is the amount of

time necessary for Detroit to meet the system's un-funded accrued liabilities. Logically, the amount of time permitted to satisfy the accrued liabilities, also known as the amortization period, affects the amount Detroit is obligated to contribute to the plan each year. In March 2004, the Board, by a six-to-five vote, adopted a 14-year amortization period to calculate Detroit's an-nual contribution to finance the unfunded accrued pension liabilities. However, Detroit maintained that a 20-year amortization period should apply under a local ordinance, notwithstanding that Detroit never followed the ordinance in the past and the Board had set the amortization period for many years.[1]

On June 4, 2004, the Board filed a complaint against Detroit and sought a declaratory judgment "that it has the right to determine the time period for the financing of unfunded accrued pension liabilities." Thereafter, the Board filed a motion for summary disposition under MCR 2.116(C)(10) and argued that, under Michigan law, the Board has the authority to determine the

[1] The record also reflects that, until now, Detroit has not followed or relied on the ordinance to limit its financing to a 20-year amortization period. The Board attached to its motion for summary disposition the affidavit of board member Walter Stampor, who stated that, since 1976, the Board has adopted the amortization periods for Detroit. According to Stampor's statement and accompanying chart of amor-tization rates, the Board adopted a 25-year amortization period in 1992, which descended one year in each subsequent year. Accordingly, by 2003, the amortization period as adopted by the Board was 14 years. Stampor further stated that, until 2003, Detroit did not object to, and regularly complied with, the Board's descending amortization periods. As explained here, had Detroit enforced Detroit City Code, § 54-2-6, the amortization period would have been 20 years through-out that period. Other than a copy of MCL 38.1140m, Detroit did not attach any other evidence to its response to the Board's motion for summary disposition. Accordingly, the evidence clearly indicates that Detroit at least acquiesced to the Board's decreasing amortization period recommendations from 1992 to 2002.

amortization period and that Detroit must abide by its recommendation and pay the amount of pension contribution calculated by the Board. Detroit responded and argued that a Detroit ordinance controls the issue and that it permits the city to use a 20-year amortization period. Accordingly, Detroit asked the trial court to grant it summary disposition under MCR 2.116(I)(2). After oral argument, the trial court issued a written opinion and order that granted summary disposition to Detroit under MCR 2.116(I)(2). For the reasons articulated below, we reverse the trial court's decision and hold that the Board has the authority to set the amortization period.

## II. STANDARD OF REVIEW AND APPLICABLE LAW

This Court reviews de novo a trial court's decision on a motion for summary disposition. *Scott v Farmers Ins Exch*, 266 Mich App 557, 560; 702 NW2d 681 (2005). As our Supreme Court recently reiterated in *Nastal v Henderson & Assoc Investigations, Inc*, 471 Mich 712, 721; 691 NW2d 1 (2005):

> A motion under MCR 2.116(C)(10) tests the factual sufficiency of the complaint. *Maiden v Rozwood*, 461 Mich 109, 120; 597 NW2d 817 (1999). The trial court must consider the affidavits, pleadings, depositions, admissions, and other evidence submitted by the parties, MCR 2.116(G)(5), in the light most favorable to the party opposing the motion. *Maiden, supra* at 120. Where the proffered evidence fails to establish a genuine issue regarding any material fact, the moving party is entitled to judgment as a matter of law. MCR 2.116(C)(10), (G)(4). *Quinto v Cross & Peters Co*, 451 Mich 358; 547 NW2d 314 (1996).

"The trial court properly grants summary disposition to the opposing party under MCR 2.116(I)(2) if the court determines that the opposing party, rather than the

moving party, is entitled to judgment as a matter of law." *Washburn v Michailoff*, 240 Mich App 669, 672; 613 NW2d 405 (2000).

This case also requires the interpretation of a statute and a city ordinance. "This Court . . . reviews questions of statutory interpretation de novo." *Local Area Watch v Grand Rapids*, 262 Mich App 136, 142; 683 NW2d 745 (2004). This Court also reviews "a lower court's interpretation of the meaning of an ordinance de novo." *Warren's Station, Inc v City of Bronson*, 241 Mich App 384, 388; 615 NW2d 769 (2000).

Const 1963, art 9, § 24 provides that "[t]he accrued financial benefits of each pension plan and retirement system of the state and its political subdivisions shall be a contractual obligation thereof which shall not be diminished or impaired thereby." The Board relies on MCL 38.1140m to argue that the Legislature conferred on it the power to determine the amortization period to finance unfunded accrued pension liabilities. The statute provides:

> *The governing board vested with the general administration, management, and operation of a system or other decision-making body that is responsible for implementation and supervision of any system shall confirm in the annual actuarial valuation and the summary annual report required under section 20h(2)[2] that each plan under this*

---

[2] Section 20h(2), MCL 38.1140h(2), provides:

Except as otherwise provided in subsection (4), a system shall have an annual actuarial valuation with assets valued on a market-related basis. A system shall prepare and issue a summary annual report. The system shall make the summary annual report available to the plan participants and beneficiaries and the citizens of the political subdivision sponsoring the system. The summary annual report shall include all of the following information:

(a) The name of the system.

*act provides for the payment of the required employer contribution as provided in this section and shall confirm in the summary annual report that the system has received the required employer contribution for the year covered in the summary annual report.* The required employer contribution is the actuarially determined contribution amount. An annual required employer contribution in a plan under this act shall consist of a current service cost payment and a payment of at least the annual accrued amortized interest on any unfunded actuarial liability and the payment of the annual accrued amortized portion of the unfunded principal liability. For fiscal years that begin before January 1, 2006, the required employer contribution shall not be determined using an amortization period greater than 40 years. For years that begin after December 31, 2005, the required employer contribution shall not be determined using an amortization period greater than 30 years. In a plan year, any current service cost payment may be offset by a credit for amortization of accrued assets, if any, in excess of actuarial accrued liability. A required employer contribution for a plan administered under this act shall allocate the actuarial present value of future plan benefits between the current service costs to be paid in the future and the actuarial accrued liability. *The governing board vested with the general administration, management, and operation of a system or other decision-making body of a system shall act upon the recommendation of an actuary and the board and the actuary shall take into account the standards of practice of the actuarial standards board of the American academy of actuaries in making the determination of the required employer contribution.* [MCL 38.1140m (emphasis added).]

(b) The names of the system's investment fiduciaries.

(c) The system's assets and liabilities.

(d) The system's funded ratio.

(e) The system's investment performance.

(f) The system's expenses.

At issue on appeal is whether the above statute conflicts with Detroit City Code, § 54-2-6(c), which provides:

> The City's annual contribution, expressed as a percent of active member compensations, to finance any unfunded accrued service pension liabilities shall be determined by dividing such unfunded accrued service pension liabilities by one percent of the present value of future compensations payable during the period of future years. Such period of future years shall be thirty years for actuarial valuation as of June 30, 1974, decreasing one year at each subsequent June 30 until a twenty year period is reached, which twenty year period shall then be used in each subsequent actuarial valuation.

### III. ANALYSIS

As noted, the Board maintains that the trial court erred because, under MCL 38.1140m, the Board has the authority to adopt the amortization period to finance unfunded accrued pension liabilities. In contrast, Detroit argues that MCL 38.1140m merely places caps on the amortization periods starting in 2006, but that "[i]t does not give the Board the right to decide on the amortization period." We disagree.

The statute provides that the Board, acting on the recommendation of an actuary, makes "the determination of the required employer contribution." MCL 38.1140m. Further, the statute explicitly provides that the Board "shall confirm" that the plan "provides for the payment of the required employer contribution" and "shall confirm" that the system receives "the required employer contribution . . . ." *Id.* "The word 'shall' is unambiguous and is used to denote mandatory, rather than discretionary, action." *STC, Inc v Dep't of Treasury*, 257 Mich App 528, 537; 669 NW2d 594 (2003). Thus, the statutory language

is unequivocal that the Board determines the amount the employer (Detroit) contributes annually to the retirement system and that the employer, in turn, is "required" to make the contribution.[3] The Board's determination also necessarily includes the amount of time in which Detroit must pay the unfunded accrued pension liabilities because the period directly affects the amount Detroit must contribute to the plan each year.[4]

As noted, MCL 38.1140m states that the Board is to determine the annual contribution, which "consist[s] of a current service cost payment . . . and the payment of the annual accrued amortized portion of the unfunded principal liability." Thus, the statute contemplates that the Board, through an actuary, shall determine the annual payment, which includes a determination of the "amortized portion of the unfunded principal liability." *Id.* Moreover, the next portion of the statute provides:

---

[3] Detroit City Code, § 54-43-4(b) also states:

The board of trustees shall annually ascertain and report to the mayor and the council the amount of contributions due the retirement system by the city, and the city council shall appropriate and the city shall pay such contributions to the retirement system during the ensuing fiscal year. . . .

[4] Detroit City Code, § 54-2-7 similarly provides:

Based upon the provisions of this ordinance, including any amendments, the Board of Trustees shall compute the City's annual contributions, expressed as a percent of active member compensation, to the retirement system for the fiscal year beginning July 1, 1975, using actuarial evaluation data as of June 30, 1974, and for each subsequent fiscal year using actuarial evaluation data as of the June 30 date which is a year and a day before the first day of such fiscal year. The Board shall report to the Mayor and to the city council the contribution percents so computed and such contribution percent shall be used in determining the contribution dollars to be appropriated by the city council and paid to the retirement system. . . .

> For fiscal years that begin before January 1, 2006, the required employer contribution shall not be determined using an amortization period greater than 40 years. For years that begin after December 31, 2005, the required employer contribution shall not be determined using an amortization period greater than 30 years. [*Id.*]

A plain reading of this section, in conjunction with the rest of MCL 38.1140m, compels the conclusion that, while the amortization period is capped at no greater than 30 years at the end of 2005, the actuary and the Board have discretion, within that limit, to determine the appropriate amortization period. Indeed, the above language evidences the Legislature's intent to grant the Board the authority to determine the amortization period because it included limits (caps) in its grant of authority to the Board to determine the employer's annual contribution. Further, it is self-evident that, because the Board has the responsibility to determine the employer's annual contribution to the system and to ensure that the system is adequately funded, an integral element of that calculation is how much the city must annually contribute to pay down its unfunded liabilities. Again, how long those liabilities are amortized, according to the calculations of the actuary, directly affects the adequacy of the system funding and the amount Detroit must pay each year.

Because MCL 38.1140m authorizes the Board to set the annual amortization periods, the statute conflicts with Detroit City Code, § 54-2-6, which dictates that, after 1974, the amortization period shall decrease one year each year from 30 years to 20 years and that, once the period reaches 20 years, the amortization rate shall remain at 20 years.[5] Therefore, under the ordinance, by 1984, the amortization period would be 20 years and remain 20

---

[5] The trial court did not agree that the statute and the ordinance conflict. As the trial court observed:

years regardless of whether the Board and an actuary

> MCLA 38.1140m sets a ceiling on the amortization period for determining employer contributions: 40 years for fiscal years that begin before January 1, 2006 and 30 years for years that begin after December 31, 2005. The ordinance sets a floor of twenty years for the amortization period. If, as [the Board] contends, the ordinance has the inherent flaw of allowing the City to "effectively determine its annual pension contribution," thus potentially causing conflict in practice, it must be addressed legislatively.

> Plaintiff's actuary, who is mandated pursuant to MCLA 38.1140m to make recommendations to the Board taking into account actuarial standards of practice, agrees that the City "reserved the right to determine annual decrement probability and salary factors and the amortization term for financing unfunded accrued service pension liabilities." While the actuary finds that Ordinance 76-H, §54-43-4, provides the Board with authority "to adopt, from time to time, assumptions as to future financial experiences," he harmonizes the ordinance provisions by reasoning that while the Board of Trustees is given authority to decide financial assumptions, the City Council retained authority to decide, inter alia, the amortization term relative to unfunded accrued service pension liabilities. Noting that he does not believe such a "restriction/reservation" is advisable, the actuary concludes that "[a]n ordinance change is required to use an amortization period other than twenty years regarding financing of unfounded [sic] accrued service pension liabilities."

The trial court's reasoning in the first paragraph is incorrect because MCL 38.1140m not only caps the amortization periods permitted for retirement systems, it provides that it is the Board's responsibility to determine Detroit's annual contribution, which would arguably include a determination of the amortization period.

Further, in the second paragraph above, the trial court erroneously attributes the quoted statements to the Board's actuary. According to the trial court, the actuary on whom the Board must rely in making its determination of the employer contribution under MCL 38.1140m concluded that the statute and ordinance should be read together and that the correct interpretation gives the Detroit City Council the authority to decide the amortization period. As the Board points out in its appeal brief, the opinions the trial court attributed to the actuary were, in fact, those of a lawyer who was asked for a legal opinion, not those of the actuary charged with advising the Board. Furthermore, to the extent the

conclude that Detroit's contribution should be different.

Detroit argues that the statute and the ordinance may arguably be read in conjunction to conclude that, while it is up to the Board to determine the amount Detroit owes based, in part, on the amortized portion of the unfunded principal liability, the city may determine the amortization period, as long as it complies with the Board's determination of how much it owes to cover the "amortized portion" of the unfunded liability. In other words, according to the city, Detroit may decide that its amortization period is 20 years if it complies with the caps in MCL 38.1140m and the Board's determination of how much it owes, including the current service cost, the amortized interest on unfunded actuarial liability, and the amortized portion of the unfunded principal liability.

Again, however, the Detroit ordinance directly interferes with the Board's authority to decide the annual contribution, which includes a determination of the amortization period. As this Court recently explained in *Shelby Charter Twp v Papesh*, 267 Mich App 92, 105-106; 704 NW2d 92 (2005):

> State law preempts a municipal ordinance where the ordinance directly conflicts with a state statute or the statute completely occupies the field that the ordinance attempts to regulate. *Rental Prop Owners Ass'n of Kent Co v Grand Rapids*, 455 Mich 246, 257; 566 NW2d 514 (1997). A direct conflict exists when the ordinance permits what the statute prohibits or the ordinance prohibits what the statute permits. *People v Llewellyn*, 401 Mich 314, 322 n 4; 257 NW2d 902 (1977).

---

trial court's opinion suggest otherwise, the Detroit City Code, § 54-2-6 does not permit the city council any discretion to decide the amortization period; rather, the ordinance dictates that the amortization period shall remain at 20 years. Accordingly, the trial court erred in its interpretation of the evidence and the ordinance.

The ordinance clearly conflicts with the statute, and the statute prevails over the ordinance. The Legislature granted the Board the authority to determine the annual plan contributions, which necessarily includes the annual amortization period, and the statute granting that authority preempts the ordinance.[6] Accordingly, the trial court erred when it granted summary disposition to Detroit. We reverse the trial court's decision and grant the Board a declaratory judgment that it has the authority under applicable law to set the amortization period.

Reversed.

---

[6] In light of our decision, we need not address the Board's equitable estoppel and laches claims.