# STATE OF MICHIGAN

# COURT OF APPEALS

JOY MANAGEMENT, d/b/a MARK TWAIN
PROPERTIES CO,

UNPUBLISHED
October 28, 2014

Plaintiff-Appellant,

v

No. 317414
Wayne Circuit Court
LC No. 12-010215-CZ

MICHIGAN BASIC PROPERTY INSURANCE
ASSOCIATION,

Defendant-Appellee/Third-Party
Plaintiff,

v

SECURITY AGENCY, INC.,

Third-Party Defendant.

Before: BOONSTRA, P.J., and MARKEY and K. F. KELLY, JJ.

PER CURIAM.

Plaintiff appeals by right from the order of the trial court denying its motion for partial summary disposition, granting defendant summary disposition, and dismissing the case.[1] Because we agree with the trial court that no insurance policy covered the subject property on the date of the loss, we affirm.

## I. PERTINENT FACTS AND PROCEDURAL HISTORY

This declaratory judgment action arises out of a fire that occurred at a rental property located at 8617 Mark Twain in Detroit on November 20, 2011. Plaintiff owns a large number of rental properties in Detroit. Ernest Karr is president of plaintiff. Defendant is an unincorporated association licensed to provide insurance in the State of Michigan.

---

[1] Defendant's claims against third-party defendant Security Agency, Inc. were resolved by case evaluation. Security Agency, Inc. is not a party to this appeal.

-1-

At some point after December of 2009, Brent Marvin, an employee of Security Agency, Inc. (an independent insurance agency), gave Karr his password and login information for defendant's website application portal. The website is designed for the use of authorized insurance agents to assist clients in applying for insurance with defendant. On November 8, 2011, Karr used Marvin's password and login to complete and electronically submit an application for fire insurance for the subject property. The application contained the following provision:

> COVERAGE CANNOT BECOME EFFECTIVE ANY EARLIER THAN 12:01 AM THE DAY AFTER OUR RECEIPT OF A PROPERLY COMPLETED APPLICATION AND APPROPRIATE PREMIUM.
>
> ALL POLICIES BECOME EFFECTIVE AT 12:01 AM.

On November 20, 2011, a fire occurred at the subject property. Also on that date, Karr mailed a premium payment for the application he had completed on November 8. On November 29, 2011, defendant denied plaintiff's application for nonpayment of premium. Defendant's records indicate that plaintiff's check for the premium payment was "received and applied the same day" on December 1, 2011. Defendant issued a refund of that payment to plaintiff on December 13, 2011.

In early January 2012, plaintiff filed with defendant a sworn statement in proof of loss. Defendant denied this claim on January 26, 2012, on the ground that no policy of insurance existed on the date of the loss. After exhausting all of defendant's internal appeal procedures, plaintiff filed this action in the trial court, alleging that defendant had breached its statutory duty to notify plaintiff, as its insured, of the denial of insurance and that defendant had changed its plan of operation without the approval of the Michigan Insurance Commissioner in violation of MCL 500.2920. Plaintiff also alleged that it relied on defendant's conduct and had a reasonable expectation of coverage, such that defendant should be estopped from denying coverage. Plaintiff sought a declaration that insurance coverage existed on November 20, 2011.

Both parties moved for summary disposition pursuant to MCR 2.116(C)(10) on the issue of whether coverage existed for the subject property on November 20, 2011. Following a motion hearing, the trial court held that (1) no contract of insurance existed between plaintiff and defendant on the date of the loss; (2) defendant had not changed its procedures in violation of MCL 500.2920, and (3) plaintiff had failed to plead the elements of waiver or estoppel or to support its claim with evidence of any conduct by defendant upon which it relied prior to the submission of its application. The trial court therefore denied partial summary disposition to plaintiff and granted summary disposition to defendant. This appeal followed.

## II. STANDARD OF REVIEW

We review de novo a trial court's decision on a motion for summary disposition. *Moser v Detroit*, 284 Mich App 536, 538; 772 NW2d 823 (2009). Summary disposition is proper under MCR 2.116(C)(10) if "there is no genuine issue as to any material fact, and the moving party is entitled to judgment . . . as a matter of law." "A genuine issue of material fact exists when the record, giving the benefit of reasonable doubt to the opposing party, leaves open an issue upon

which reasonable minds might differ." *West v Gen Motors Corp*, 469 Mich 177, 183; 665 NW2d 468 (2003). We consider the affidavits, pleadings, depositions, admissions, and other documentary evidence in the light most favorable to the nonmoving party. *Liparoto Constr, Inc v Gen Shale Brick, Inc*, 284 Mich App 25, 29; 772 NW2d 801 (2009). All reasonable inferences are to be drawn in favor of the nonmovant. *Dextrom v Wexford County*, 287 Mich App 406, 415; 789 NW2d 211 (2010). If it appears that the opposing party is entitled to judgment, the court may render judgment in favor of the opposing party. MCR 2.116(I)(2); *Bd of Trustees of Policemen & Firemen Retirement Sys v Detroit*, 270 Mich App 74, 77-78; 714 NW2d 658 (2006). A genuine issue of material fact exists when the record, giving the benefit of reasonable doubt to the opposing party, leaves open an issue upon which reasonable minds could differ. *Allison v AEW Capital Mgt, LLP*, 481 Mich 419, 425; 751 NW2d 8 (2008).

We review de novo legal issues relating to the validity of a contract, but we review for clear error any factual questions regarding contract formation. See *46th Circuit Trial Court v Crawford Co*, 476 Mich 131, 157; 719 NW2d 553 (2006). We also review de novo issues of statutory interpretation. See *Cameron v Auto Club Ins Ass'n*, 476 Mich 55, 61; 718 NW2d 784 (2006). Finally, we review de novo the appropriateness of an equitable remedy, such as estoppel. *Alibri v Detroit/Wayne Co Stadium Authority*, 254 Mich App 545, 555; 658 NW2d 167 (2002).

## III. EXISTENCE OF INSURANCE POLICY

Although plaintiff's arguments are difficult to parse, it appears that plaintiff's essential position is that the trial court erred in concluding that no policy of insurance existed that covered the subject property on the date of the fire. We disagree.

Plaintiff contends in part that defendant did not properly decline plaintiff's application for insurance pursuant to MCL 500.2122(1) and that an insurance policy therefore arose by operation of law. MCL 500.2122(1) provides:

> An insurer or agent, upon making a declination of insurance, shall inform the applicant of each specific reason for the declination. If the application or request for coverage was made in writing, the insurer or agent shall provide the explanation of reasons in writing. If the application or request for coverage was made orally, the insurer or agent may provide the applicant with an oral explanation instead of a written explanation, and shall offer to provide a written explanation if the applicant requests a written explanation within 90 days.

Generally, this statute is invoked to limit the grounds an insurer may assert for denying coverage to the grounds stated in its letter denying coverage for a particular claim. See, e.g., *Kirschner v Process Design Assocs, Inc*., 459 Mich 587, 592; 592 NW2d 707 (1999) ("Generally, once an insurance company has denied coverage to an insured and stated its defense, the insurance company has waived or is estopped from raising new defenses."). In other words, it is generally applied when an insurer denies coverage for a claim under a policy; plaintiff does not cite, and this Court has not found, authority for the proposition that an insurer's failure to decline an application for an insurance policy in writing gives rise to the creation of an insurance policy by operation of law. Plaintiff does refer to a circuit court case, *Acorn*

*Investment Co v Michigan Basic Property Association*, unpublished opinion of the Wayne Circuit Court, issued July 14, 2009 (Docket No. 07-726774-CZ), in which Karr was also involved, for this proposition. However, apart from the nonbinding nature of that case, *Acorn Investment* involved a situation where an insurer, having issued a policy, failed to effectively cancel the policy because it failed to tender the plaintiff's excess premium payment in violation of MCL 500.2833.[2] *Id*. at 2, 7. No such factual situation exists in the instant case.[3]

Instead, the record reflects that Karr, by his own admission, mailed the check for the minimum premium on November 20, 2011, the very day of the fire. As noted, the application explicitly provided that, if approved, coverage would not become effective until the day after receipt of both the application *and* the appropriate premium. The record further reflects that the internal operating procedures of defendant also indicate that it will not issue a policy until the appropriate premium is received, and that such policies will be effective the day after the receipt of such a payment. Thus, it is clear that defendant, unlike some insurers, does not issue "binders" for insurance, i.e., a "contract of temporary insurance pending issuance of a formal policy or proper rejection" by the insurer. See *Universal Underwriters Group v Allstate Ins Co*, 246 Mich App 713, 721; 635 NW2d 52 (2001).[4]

Plaintiff further asserts that when defendant moved to an online application system in 2009, it altered its procedure concerning the effective date of policies, such that a policy now is essentially issued at the time of online application, provided that payment of a premium is made within 20 days. In support of this assertion, plaintiff refers to the fact that its application was given an identifier number at the time it was submitted (which, if a policy were issued, would also be the policy number), as well as an email from Laurie Kupchick, who holds the position of Financial Statement Supervisor with defendant, to Dale Weible of the claims department, regarding plaintiff's application for insurance. In this email, Kupchick states as follows:

> Once a quote is generated by an Agent, our system is set up to allow 15 days for the 25% down payment to be sent or paid before the cancel process beings. There is an additional 5 days built in for payment processing time. If the payment is not applied by that time the policy is cancelled. If we receive a payment after the policy is cancelled it is refunded 10 business days after receipt which gives us time to make sure the check is good and not returned from the bank.

The email further states that plaintiff's "policy was cancelled for non-payment" on November 29, 2011. Thus, according to plaintiff, under defendant's allegedly "new" system, a

---

[2] MCL 500.2833 provides for mandatory provisions that fire insurance policies issued in Michigan must contain.

[3] Plaintiff appears to contend that *Acorn Investment* has some collateral estoppel effect on this Court's decision in this case. That position is axiomatically defective for reasons that require no further explication.

[4] Binders are generally found in the automotive insurance context. See *Jackson v Transamerica Ins Corp of America*, 207 Mich App 460, 462; 526 NW2d 31 (1994).

-4-

policy issued when he submitted his application for insurance electronically on November 8, and was in effect at least until November 28, even assuming payment had not been received by that date. Plaintiff argues that, as a result of this alleged new procedure, a policy was in place at the time of the loss on November 20.

Plaintiff's argument relies on Kupchick's use of the phrase "the policy is cancelled" (rather than, e.g., "the application is declined") in an internal email to a member of the claims department, and ignores the language of the application itself as well as the internal operating procedures of defendant. Plaintiff presents no evidence that Kupchick's statement reflected a change in the operating procedures of defendant rather than an inartful choice of words in a communication between employees.

Giving the language of the insurance application its ordinary and plain meaning, as we are bound to do, see *DeFrain v State Farm Mut Auto Ins Co*, 491 Mich 359, 367; 817 NW2d 504 (2012), we hold that no policy of insurance existed between plaintiff and defendant on the date of the loss. As defendant notes, Karr admitted to mailing the minimum premium payment on November 20, 2011, the same date as the loss. Thus, even if defendant had received and processed the premium *that very same day*, the policy would not have come into effect until 12:01 a.m. on November 21, 2011, the day after the loss. Further, plaintiff's contention that MCL 500.2122(1) provides for a policy to have arisen by operation of law is devoid of factual or legal support. The record reflects that plaintiff did not even complete the requirements of applying for an insurance policy with defendant until the day of the fire. Thus, even assuming the payment was instantaneously received and processed by defendant, the earliest effective date of the policy would have been the day after the loss, and any violation of MCL 500.2122(1) would not compel the finding that a policy existed on November 20, 2011.

Finally, defendant did send a letter explaining its reason for declining plaintiff's claim for insurance coverage on January 26, 2012. In that letter, Weible states that "no policy was ever issued for 8617 Mark Twain, Detroit, MI 48228, because a properly completed application and the required premium amount did not arrive at Michigan Basic within the required time, [sic] the offer of coverage was declined." Thus, plaintiff's application for coverage was in fact declined in writing with specific reasons for the declination, although the written declination came after the refund of plaintiff's premium payment. There is no merit to plaintiff's claim that a policy of insurance existed on the date of the loss, either arising from defendant's operating procedures or from a violation of MCL 500.2122(1), and the trial court correctly granted summary disposition on this ground.

IV. VIOLATION OF MCL 500.2920(1)

Plaintiff additionally argues that defendant violated MCL 500.2920(2), which provides:

> The pool shall adopt a plan of operation and any amendments to the plan, not inconsistent with this chapter, necessary to assure the fair, reasonable, equitable, and nondiscriminatory manner of administering the pool, including compliance with chapter 21, and to provide for any other matters as are necessary or advisable to implement this chapter. The plan of operation and any amendments to the plan

shall be subject to prior written approval by the commissioner. All members of the pool shall comply with the plan of operation.

Plaintiff contends that defendant amended its plan of operation in 2009 by putting in place the alleged system described in Part III of this opinion, wherein an applicant receives an insurance policy at the time of application, and further argues that this amendment was without the prior written approval of the insurance commissioner. Plaintiff's argument is puzzling, as plaintiff relies on that very alleged amendment in support of its contention that a valid insurance policy existed on the date of the loss. In any event, as stated in Part III, the record does not support plaintiff's contention that any such amendment occurred. The trial court correctly determined that plaintiff had failed to provide evidence that defendant changed its procedures in violation of MCL 500.2920. Further, plaintiff provides no support for its argument that the remedy for a violation of MCL 500.2920(2) is for an insurance policy to arise by operation of law; indeed such an argument makes little sense in light of plaintiff's claim that the alleged illegal amendment itself provides it with a valid policy.

## V. ESTOPPEL

Plaintiff further argues that defendant should be equitably estopped from denying the existence of a valid policy of insurance. We disagree.

> Equitable estoppel is not an independent cause of action, but instead a doctrine that may assist a party by precluding the opposing party from asserting or denying the existence of a particular fact. Equitable estoppel may arise where (1) a party by representations, admissions, or silence intentionally or negligently induces another party to believe facts, (2) the other party justifiably relies and acts on that belief, and (3) the other party is prejudiced if the first party is allowed to deny the existence of those facts. [*Lakeside Oakland Dev, LC v H & J Beef Co*, 249 Mich App 517, 527; 644 NW2d 765 (2002), quoting *Conagra, Inc v Farmers State Banks*, 237 Mich App 109, 140-141; 602 NW2d 390 (1999).]

Plaintiff argues that defendant accepted previous policy applications and provided insurance policies that were "backdated" to 12:01 a.m. the day following the date which the application was completed, regardless of when the premium was paid. Plaintiff supports this argument with reference to Karr's deposition, and claims that Karr provided sworn testimony regarding this "backdating" of policies. However, Karr merely stated that he had submitted "at least 30 or 40" applications to defendant since 2009, and agreed that they had "followed the procedures that are described by Ms. Kupchick to Mr. Weible" in the email referenced in Part III. Kupchick's email makes no reference to backdating policies or the effective date of policies that are issued. Plaintiff presents no other evidence in support of its claim. In short, plaintiff has not shown any "representations, admissions, or silence" on the part of defendant, prior to the date of the loss, which would have induced it to believe it possessed a valid insurance policy on the subject property on November 20, 2011, especially in light of language on the application itself which specifically stated that no policy would issue until the day after the premium payment was received. *Lakeside Oakland Dev*, 249 Mich App at 527. The trial court thus correctly held that plaintiff had not satisfied the elements of equitable estoppel.

Because we affirm the trial court's grant of summary disposition, and denial of partial summary disposition, on the grounds stated in its opinion, we decline to address defendant's alternative argument that plaintiff did not possess an insurable interest in the subject property.

Affirmed.

/s/ Mark T. Boonstra
/s/ Jane E. Markey
/s/ Kirsten Frank Kelly