# Syllabus

Chief Justice:
Robert P. Young, Jr.

Justices:
Michael F. Cavanagh
Stephen J. Markman
Mary Beth Kelly
Brian K. Zahra
Bridget M. McCormack
David F. Viviano

Reporter of Decisions:
Corbin R. Davis

**This syllabus constitutes no part of the opinion of the Court but has been prepared by the Reporter of Decisions for the convenience of the reader.**

HARRIS v AUTO CLUB INSURANCE ASSOCIATION

Docket No. 144579.  Argued March 6, 2013 (Calendar No. 7).  Decided July 29, 2013.

Brent Harris filed an action in the Oakland Circuit Court against Auto Club Insurance Association (ACIA), seeking to recover a duplicate payment for medical expenses incurred as the result of a motorcycle-motor vehicle accident, which had been paid directly to providers by his health insurer, Blue Cross Blue Shield of Michigan (BCBSM).  Harris asserted that ACIA was required to pay him directly the same amounts paid by BCBSM to any healthcare provider for the medical expenses.  ACIA filed a third-party complaint against BCBSM and Harris filed an amended complaint naming BCBSM as a defendant.  The circuit court, Rudy J. Nichols, J., granted summary disposition in favor of BCBSM and ACIA, concluding that because ACIA's policy was uncoordinated, ACIA was the primary insurer, and that the BCBSM certificate coordinated benefits with the no-fault policy.  Relying on the health insurance contract language, the circuit court determined that BCBSM was not required to pay for care and services for which Harris did not have to pay or for which he would not have been charged if he did not have coverage.  Harris appealed, challenging only  the circuit court's order dismissing his claims against BCBSM.  In a split decision, the Court of Appeals, O'CONNELL, P.J., and DONOFRIO, J., MURRAY, J. (concurring in part and dissenting in part), reversed the circuit court order, concluding that the BCBSM certificate did not coordinate with ACIA's no-fault policy.  It further determined that Harris had incurred expenses when he sought treatment for his injuries that arose from the motor vehicle accident and that once he became liable for those expenses, BCBSM was in turn liable to cover those expenses regardless of the fact that ACIA had paid those bills as PIP benefits.  Unpublished opinion per curiam of the Court of Appeals, issued December 27, 2011 (Docket No. 300256).  The Supreme Court granted BCBSM's application for leave to appeal to determine whether Harris was entitled to receive a double recovery from both ACIA and BCBSM of medical expenses arising from a motorcycle accident involving a motor vehicle.  491 Mich 933 (2012).

In an opinion per curiam signed by Chief Justice YOUNG and Justices MARKMAN, KELLY, ZAHRA, MCCORMACK, and VIVIANO, the Supreme Court *held*:

An individual injured in a motorcycle-automobile accident who receives personal protection insurance (PIP) benefits by statute under MCL 500.3114(5)(a) of the no-fault act, MCL 500.3101 *et seq*., does not legally have to pay the medical expenses incurred as a result of the accident; rather, the no-fault insurer that is legally assigned under MCL 500.3114(5) is responsible.  If an insured's health insurance policy provides that it is not liable for medical

expenses that the insured does not legally have to pay, the insured may not receive double recovery from the health insurer for those medical expenses paid as PIP benefits by the legally designated no-fault insurer under MCL 500.3114(5).

Under certain circumstances, an insured who has elected an uncoordinated no-fault policy may obtain double recovery from both the insured's no-fault insurer and the health insurer for medical expenses arising from the same accident. Generally, an insured may procure insurance policies that are uncoordinated with other policies to allow for such double recovery. Under MCL 500.3114(5)(a), with regard to order of priority, a person suffering accidental bodily injury arising from a motor vehicle accident which shows evidence of the involvement of a motor vehicle while an operator or passenger of a motorcycle, must first claim PIP benefits from the insurer of the owner or registrant of the motor vehicle involved in the accident. In this case, the Court of Appeals erred by concluding that Harris was entitled to double recovery. Under MCL 500.3114(5)(a), Harris was not obligated to pay his medical expenses because, as a matter of law, ACIA was liable for Harris's PIP benefits. ACIA was liable regardless of when the expenses were incurred and BCBSM's certificate that stated it would not cover those services for which Harris legally did not have to pay precluded Harris from receiving double recovery for those medical expenses.

Reversed in part, trial court judgment reinstated.

Justice CAVANAGH, dissenting, would have affirmed the Court of Appeals' conclusion that Harris legally had to pay the medical expenses at the time he received care and services for injuries resulting from his accident and could thus seek duplicate recovery of those expenses from BCBSM.

©2013 State of Michigan

# Opinion

Chief Justice:          Justices:

Robert P. Young, Jr.    Michael F. Cavanagh
                        Stephen J. Markman
                        Mary Beth Kelly
                        Brian K. Zahra
                        Bridget M. McCormack
                        David F. Viviano

FILED JULY 29, 2013

STATE OF MICHIGAN

SUPREME COURT

BRENT HARRIS,

        Plaintiff-Appellee,

v                                           No. 144579

AUTO CLUB INSURANCE
ASSOCIATION,

        Defendant-Third-Party
        Plaintiff-Appellee,

and

BLUE CROSS BLUE SHIELD OF
MICHIGAN,

        Third-Party Defendant-
        Appellant.

BEFORE THE ENTIRE BENCH

PER CURIAM.

The significant question in this case is whether a person claiming personal protection insurance (PIP) benefits under MCL 500.3114(5)(a) for injuries arising from a motor vehicle accident may also recover an award for those same injuries under a health insurance policy that contains a provision titled, "Care and Services That Are Not Payable," which provides, "[w]e do not pay for the following care and services: Those for which you legally do not have to pay or for which you would not have been charged if you did not have coverage under this certificate." The Court of Appeals majority in this case held that because plaintiff Brent Harris, for purposes of the no-fault act, incurred expenses on receiving treatment,[1] he could seek a duplicate award from his health insurer, third-party defendant Blue Cross Blue Shield of Michigan (BCBSM), because these were services for which Harris legally had to pay.[2] We conclude that, regardless of when Harris incurred expenses arising from the motor vehicle accident, he simply did not legally have to pay these expenses. When Harris sought treatment for his injuries under MCL 500.3114(5)(a), the legally assigned insurer, defendant Auto Club Insurance Association (ACIA), became liable for all of Harris's PIP expenses. Because BCBSM's policy plainly provides that BCBSM is not liable for expenses that Harris does not legally have to pay, Harris cannot collect expenses from both ACIA and BCBSM. Accordingly,

---

[1] MCL 500.3107(1)(a) provides that "personal protection insurance benefits are payable for . . . [a]llowable expenses consisting of all reasonable charges incurred for reasonably necessary products, services and accommodations for an injured person's care, recovery, or rehabilitation."

[2] *Harris v Auto Club Ins Ass'n*, unpublished opinion per curiam of the Court of Appeals, issued December 27, 2011 (Docket No. 300256), p 4.

we reverse in part the December 27, 2011 judgment of the Court of Appeals and reinstate the judgment of the Oakland Circuit Court.

## I. FACTS AND PROCEEDINGS

On July 11, 2008, Harris was injured when he was struck by a motor vehicle while operating a motorcycle. Harris had a health insurance policy, referred to as a Professional Services Group Benefit Certificate (the policy or the certificate), with BCBSM. The owner of the motor vehicle that struck Harris was insured under a no-fault insurance policy issued by ACIA. Under the no-fault act, MCL 500.3101 *et seq*., the statutory definition of motor vehicle expressly "does not include a motorcycle."[3] However, MCL 500.3114 provides in relevant part:

> (5) A person suffering accidental bodily injury arising from a motor vehicle accident which shows evidence of the involvement of a motor vehicle while an operator or passenger of a motorcycle shall claim personal protection insurance benefits from insurers in the following order of priority:
>
> (a) The insurer of the owner or registrant of the motor vehicle involved in the accident.

Accordingly, if Harris claimed PIP benefits, ACIA would be responsible for paying those benefits, despite the fact Harris did not purchase a no-fault insurance policy from ACIA.

Following his accident, Harris sought insurance coverage for his medical bills from both ACIA and BCBSM. Harris expected BCBSM to pay the bills submitted by his medical care providers and expected ACIA to send a check directly to him in the same amount as the BCBSM payments. BCBSM initially paid $19,801.75 in benefits, but then

---

[3] MCL 500.3101(2)(e).

retracted those payments and denied coverage, relying on provisions in its policy that stated BCBSM would not pay for medical care and services for which benefits are paid by another plan. In light of BCBSM's denial of coverage, ACIA paid all Harris's medical bills, including those bill payments retracted by BCBSM. ACIA has paid in excess of $85,000.

Harris then filed this lawsuit naming ACIA as the only defendant. Harris alleged that ACIA was required to pay him directly the same amounts paid by BCBSM to any healthcare provider for medical expenses arising from the motor vehicle accident. ACIA subsequently filed a third-party complaint against BCBSM. Harris then filed an amended complaint naming BCBSM as a defendant.

BCBSM and Harris filed motions for summary disposition. ACIA opposed the motions. The circuit court determined that because ACIA's policy was uncoordinated,[4] ACIA was the primary insurer. The court also opined that the BCBSM certificate coordinated benefits with the no-fault policy. The court emphasized that the BCBSM certificate included a "Coordination of Benefits" provision. The court additionally relied on the "Physician and Other Professional Provider Services That Are Not Payable" and "Care and Services That Are Not Payable" provisions in concluding that BCBSM does not pay for care and services for which the insured legally does not have to pay or for which the insured would not have been charged if the insured did not have coverage. The court held that ACIA was primarily responsible for the payment of Harris's medical

---

[4] An uncoordinated policy means that an insurer pays benefits regardless of other insurance the insured may have. *Smith v Physicians Health Plan, Inc*, 444 Mich 743, 747; 514 NW2d 150 (1994).

4

expenses. Accordingly, the court denied Harris's motion for summary disposition, but granted BCBSM's motion, resulting in the dismissal of all the claims asserted against BCBSM by Harris and ACIA. The court also granted summary disposition in favor of ACIA against Harris.

Harris appealed, challenging only the circuit court's order dismissing his claims against BCBSM. ACIA did not appeal the circuit court's order dismissing its third-party claims against BCBSM. A split panel of the Court of Appeals reversed the circuit court's order to the extent that it granted summary disposition to BCBSM.[5] The majority characterized the dispute as "whether the BCBSM certificate coordinates with the no-fault policy."[6] The majority rejected BCBSM's reliance on several provisions in the certificate that the circuit court relied on to preclude coverage.[7]

The majority expressly addressed the provision of the BCBSM certificate titled, "Care and Services That Are Not Payable,"[8] which as previously stated, provides: "We do not pay for the following care and services: Those for which you legally do not have to pay or for which you would not have been charged if you did not have coverage under this certificate." Rather than applying the language of this provision, however, the majority looked to the Court of Appeals' decisions in *Shanafelt v Allstate Ins Co* and

---

[5] *Harris*, unpub op at 2.

[6] *Id*. at 1.

[7] *Id*. at 2-4.

[8] *Id*. at 3-4.

*Bombalski v Auto Club Ins Ass'n.*[9] In those cases, the panels "examined the meaning of the term 'incurred' in MCL 500.3107(1) and considered the no-fault insurer's contention that the plaintiff did not 'incur[]' expenses that were paid by the health insurer."[10] As noted by the majority, *Shanafelt* explained that "[t]he primary definition of the word 'incur' is 'to become liable for.'"[11] In applying this definition, *Shanafelt* reasoned that

> [o]bviously, [the] plaintiff became liable for her medical expenses when she accepted medical treatment. The fact that plaintiff had contracted with a health insurance company to compensate her for her medical expenses, or to pay directly the health care provider on her behalf, does not alter the fact that she was obligated to pay those expenses.[12]

Relying on this reasoning, the majority concluded that Harris had incurred expenses when he sought treatment for his injuries that arose from the motor vehicle accident, and that once he became liable for those expenses, BCBSM was in turn liable to cover those expenses.[13] The majority concluded in part that the circuit court "erred in determining that the BCBSM certificate coordinated with the no-fault policy."[14]

The majority also addressed BCBSM's contention that *Shanafelt* and *Bombalski* were inapposite because they addressed the no-fault act while the instant case turns on the

---

[9] *Id*. at 2-3, citing *Shanafelt v Allstate Ins Co*, 217 Mich App 625; 552 NW2d 671 (1996) and *Bombalski v Auto Club Ins Ass'n*, 247 Mich App 536; 637 NW2d 251 (2001).

[10] *Harris*, unpub op at 3.

[11] *Id*. at 3-4, quoting *Shanafelt*, 217 Mich App at 638.

[12] *Shanafelt*, 217 Mich App at 542-543.

[13] *Harris*, unpub op at 4.

[14] *Id*. at 6.

6

language of BCBSM's certificate.[15] The majority rejected this claim because the term "incurred" is synonymous with the phrase, "legally obligated to pay."[16] The majority opined that the rationale of *Shanafelt* and *Bombalski* was nonetheless applicable.[17] That is, "that a party receiving services has a legal obligation to pay for them when rendered and incurs the expense even if the expense is paid by an insurer, is applicable here, although the phrase and context are different."[18]

Judge MURRAY partially dissented.[19] Judge MURRAY found controlling the provision in the certificate, titled "Care and Services That Are Not Payable." Judge MURRAY noted that this provision was stated in the present tense, and that "whether we look to the factual situation at the time the complaint was filed or when plaintiff submitted his demand upon BCBSM, we know that plaintiff did not legally have to pay anything."[20]

---

[15] *Id*. at 4.

[16] *Id*.

[17] *Id*.

[18] *Id*.

[19] Judge MURRAY concurred in the majority's decision to affirm the circuit court's order denying Harris's motion for summary disposition, as well as the dismissal of ACIA, but dissented from the majority's decision to reverse the order granting BCBSM's motion for summary disposition. *Harris*, unpublished opinion per curiam of the Court of Appeals, issued December 27, 2012 (Docket No. 300256), p 1 (MURRAY, J., concurring in part and dissenting in part).

[20] *Id*. (MURRAY, J., concurring in part and dissenting in part).

We granted BCBSM's application for leave to appeal, instructing that "[t]he parties shall include among the issues to be briefed whether [Harris] is entitled to a double recovery from both [ACIA] and [BCBSM] of medical expenses arising from a motorcycle accident involving a motor vehicle."[21]

## II. STANDARD OF REVIEW

This Court reviews a circuit court's decision on a motion for summary judgment de novo.[22] We also review de novo the proper interpretation of a contract.[23]

## III. ANALYSIS

In *Smith v Physicians Health Plan, Inc*,[24] this Court acknowledged that an insured who had elected an uncoordinated no-fault policy may, under certain circumstances, be able to obtain a double recovery from both the no-fault insurer and the health insurer for medical expenses arising from the same accident. "It is when both the no-fault automobile insurance and the health insurance are uncoordinated policies that multiple recovery is possible for the insured."[25] Thus, for example, in *Shanafelt*,[26] the Court of Appeals permitted an insured who had an uncoordinated no-fault policy, and was allegedly injured in a motor vehicle accident, to collect the costs of her PIP benefits from

[21] *Harris v Auto Club Ins Ass'n*, 491 Mich 933 (2012).

[22] *Maiden v Rozwood*, 461 Mich 109, 118; 597 NW2d 817 (1999).

[23] *Rory v Continental Ins Co*, 473 Mich 457, 464; 703 NW2d 23 (2005).

[24] *Smith v Physicians Plan, Inc*, 444 Mich 743, 752; 747; 514 NW2d 150 (1994).

[25] *Id*. at 752, citing *Haefele v Meijer, Inc*, 165 Mich App 485; 418 NW2d 900 (1987).

[26] *Shanafelt*, 217 Mich App 625.

8

her no-fault insurer despite the fact that the insured's health insurer had already covered the expense.[27]

However, in this case, Harris's claim is fundamentally at odds with those cases. Unlike the claimant in *Shanafelt*, and other cases in which a double recovery of insurance benefits was awarded, Harris is not claiming benefits under a no-fault insurance policy that he or anyone else procured. Harris is neither a third-party beneficiary[28] nor a subrogee[29] of the no-fault policy issued to the person that struck him and thus he is not

---

[27] Harris also relies on *Bombalski*, but this reliance is misplaced. Admittedly, the facts of *Bombalski* are very similar to the instant case. However, the court in *Bombalski* did not address whether the insured was entitled to a double recovery because the parties agreed that he was. Indeed, "the parties did not dispute [the] plaintiff[-insured]'s entitlement to uncoordinated personal protection benefits from defendant in addition to the coverage provided by BCBSM." *Id*. at 539. Rather, "the only issue in [*Bombalski*] involved [the] [p]laintiff[-insured]'s claim for reimbursement of medical benefits and the rate of that reimbursement." *Id*. That is not the case here.

[28] MCL 600.1405, "Rights of third party beneficiaries," provides in part that:

> [a]ny person for whose benefit a promise is made by way of contract, as hereinafter defined, has the same right to enforce said promise that he would have had if the said promise had been made directly to him as the promisee.
>
> (1) A promise shall be construed to have been made for the benefit of a person whenever the promisor of said promise had undertaken to give or to do or refrain from doing something directly to or for said person.

There is no allegation in this case that the no-fault insurance policy contained any promise to benefit Harris.

[29] A subrogee is defined as "[o]ne who is substituted for another in having a right, duty, or claim." Black's Law Dictionary (9th ed). However, subrogation is based on equitable principles that are not present in this case because Harris has a statutory remedy. *Auto Club Ins Ass'n v New York Life Ins Co*, 440 Mich 126, 132; 485 NW2d 695 (1992).

9

eligible to receive benefits under that policy. Rather, Harris's right to PIP benefits arises solely by statute. As previously noted, MCL 500.3114 provides in relevant part:

> (5) A person suffering accidental bodily injury arising from a motor vehicle accident which shows evidence of the involvement of a motor vehicle while an operator or passenger of a motorcycle shall claim personal protection insurance benefits from insurers in the following order of priority:

> (a) The insurer of the owner or registrant of the motor vehicle involved in the accident.

The Court of Appeals majority erred when it concluded that Harris was covered by the uncoordinated no-fault insurance policy held by the motor vehicle driver involved in the accident. Harris is entitled to PIP coverage because MCL 500.3114(5)(a) designates ACIA as the responsible insurer. This conclusion is consistent with our holding in *Smith*, where we concluded that an insured must pay a premium to obtain insurance policies that provide for double recovery.[30] Harris has simply not shown that he paid the necessary premiums to receive a double recovery.

Under MCL 500.3114(5)(a), Harris was not obligated to pay his medical expenses because, as a matter of law, ACIA was liable for Harris's PIP expenses. This disposition is generally consistent with Judge MURRAY's partial dissenting opinion, except that it focused almost entirely on the present tense of the phrase "for which you legally do not have to pay," to determine the applicability of MCL 500.3114(5)(a). Judge MURRAY

---

[30] *Smith*, 444 Mich at 760. We also note that denying Harris double recovery is in accord with the no-fault act's stated objectives to maintain availability of insurance at affordable rates and cost-effective health care, neither of which are promoted when decisions about health care are influenced by the potential of a matching cash grant. *Id*. at 757.

10

considered only whether Harris had potential liability "at the time the complaint was filed or when [he] submitted his demand upon BCBSM."[31] We conclude, however, that ACIA was liable regardless of when Harris first received treatment, when Harris filed a complaint against BCBSM or when Harris submitted his demand to BCBSM. Consequently, the provision of the BCBSM certificate titled "Care and Services That Are Not Payable," is directly applicable when Harris claimed PIP benefits under MCL 500.3114(5)(a). Regardless of when Harris sought treatment for his injuries, those services are "[t]hose for which [Harris] legally [did] not have to pay . . . ." Accordingly, Harris is not entitled to a double recovery. We reverse in part the December 27, 2011 judgment of the Court of Appeals and reinstate the judgment of the Oakland Circuit Court.

> Robert P. Young, Jr.
> Stephen J. Markman
> Mary Beth Kelly
> Brian K. Zahra
> Bridget M. McCormack
> David F. Viviano

---

[31] *Harris*, unpub op at 1 (MURRAY, J. concurring in part and dissenting in part).

11

# S T A T E   O F   M I C H I G A N

## SUPREME COURT

BRENT HARRIS,

      Plaintiff-Appellee,

v

No. 144579

AUTO CLUB INSURANCE
ASSOCIATION,

      Defendant-Third-Party
      Plaintiff-Appellee,

and

BLUE CROSS BLUE SHIELD
OF MICHIGAN,

      Third-Party
      Defendant-Appellant.

_____

CAVANAGH, J. (*dissenting*).

I do not join the majority opinion because, in my view, the Court of Appeals did not err by concluding that the applicable language of Blue Cross Blue Shield of Michigan's (BCBSM) certificate at issue in this case does not exclude coverage from BCBSM. Specifically, I do not believe that the Court of Appeals majority erred by reasoning that Harris legally had to pay his medical expenses at the time he received care and services and, thus, is not precluded from recovering medical expenses from BCBSM. *Harris v Auto Club Ins Ass'n*, unpublished opinion per curiam of the Court of Appeals,

issued December 27, 2011 (Docket No. 300256), pp 3-4.  Accordingly, I would affirm the judgment of the Court of Appeals.

Michael F. Cavanagh