# STATE OF MICHIGAN

# COURT OF APPEALS

STATE FARM MUTUAL AUTOMOBILE
INSURANCE COMPANY,

        Plaintiff-Appellant,

v

MICHIGAN MUNICIPAL RISK
MANAGEMENT AUTHORITY and QBE
INSURANCE CORPORATION,

        Defendant-Appellees

and

QBE INSURANCE CORPORATION,

        Third-Party-Plaintiff/Appellant,

v

STATE FARM MUTUAL AUTOMOBILE
INSURANCE COMPANY,

        Third-Party-Defendant/Appellee,

and

SECRETARY OF STATE, WHITNEY GRAY,
MARTIN BONGERS and WILLIAM JOHNSON,

        Third-Party-Defendants.

UNPUBLISHED
February 19, 2015

Nos. 319709 & 319710
Kalamazoo Circuit Court
LC No. 2012-000202-CK

Before: RIORDAN, P.J., and MURPHY and BOONSTRA, JJ.

PER CURIAM.

-1-

In Docket No. 319709, plaintiff/third-party defendant State Farm Automobile Insurance Agency ("State Farm") appeals by leave granted[1] the trial court's December 4, 2013 interlocutory order denying its motion for summary disposition on the ground that a genuine issue of material fact exists regarding whether the motor vehicle operated by a police officer was "involved" in the accident underlying this case. In Docket No. 319710, defendant/third-party plaintiff QBE Insurance Corporation ("QBE") appeals by leave granted[2] the trial court's interlocutory order, also dated December 4, 2013, denying QBE's motion for summary disposition on the ground, inter alia, that it could not rescind its policy of insurance. The leave granted to QBE was limited to the issue of whether the trial court erred in denying QBE's motion on the basis of the "innocent party rule."[3] These two interlocutory appeals were consolidated by order of this Court.[4] We reverse in Docket No. 319709, and affirm in Docket No. 319710, and remand for further proceedings.

## I. PERTINENT FACTS AND PROCEDURAL HISTORY

This case arises out of a motor vehicle accident and presents a priority dispute among three insurers: State Farm, QBE, and Michigan Municipal Risk Management Authority ("MMRMA").

On August 12, 2011, Officer Richard Anson of the Parchment Police Department[5] conducted a traffic stop of a 1998 Pontiac Grand Prix GT driven by William Johnson. Anson exited his vehicle and began to approach Johnson's vehicle. Before Anson could reach Johnson's vehicle, Johnson drove away. Anson returned to his vehicle (a Toyota Prius), activated the vehicle's lights and siren, and began to follow defendant. Johnson ran a red light and collided with a motorcycle being operated by Martin Bongers, causing injury to Bongers.

At the time of the accident, MMRMA insured the police vehicle. State Farm insured Bongers' personal vehicle, but not the motorcycle he was riding when hit by Johnson. The Grand Prix driven by Johnson had been purchased by Johnson, but was titled and registered to Whitney Gray, his girlfriend, because Johnson's lack of a driver's license and driving record precluded him from being able to obtain a motor vehicle registration or title in his name. The Grand Prix was uninsured. QBE insured a 1999 Oldsmobile Cutlass that was driven by Gray but

---

[1] See *State Farm Mutual Auto Ins Co v Mich Municipal Risk Mgmt Auth*, unpublished order of the Court of Appeals, issued May 23, 2014 (Docket No. 319709).

[2] See *State Farm Mutual Auto Ins Co v Mich Municipal Risk Mgmt Auth*, unpublished order of the Court of Appeals, issued May 23, 2014 (Docket No. 319710).

[3] *Id.*

[4] *Id.*

[5] At some point subsequent to August 12, 2011, Parchment disbanded its police department. According to State Farm, it has been unable to locate Officer Anson in order to depose him. MMRMA indicated before the trial court that it could produce the officer for discovery if State Farm wished to depose him.

titled and registered to Tina M. Poole, although QBE represents that it was unaware that the Cutlass was titled and registered to Poole. QBE's policy listed Gray as the named insured.

State Farm paid no-fault personal injury benefits to Bongers. On April 18, 2012, State Farm brought this suit, naming both MMRMA and QBE as defendants, to determine which of the three insurers had the highest priority and, hence, was responsible for paying no-fault benefits to Bongers; State Farm sought reimbursement of the first-party benefits it paid to Bongers pursuant to MCL 500.3114(5)(a). QBE filed a third-party complaint against State Farm (and other parties).[6] Relative to State Farm, QBE sought a declaration from the trial court that it was not liable to State Farm for any of the PIP benefits paid to Bongers because it was entitled to rescind on grounds of fraud the policy it had issued to Gray.

Johnson testified at his deposition that two days before the accident, he was stopped by the police, fled because he had an outstanding warrant for violating his probation, and managed to evade the police officer chasing him. Johnson testified that on the day of the accident, he pulled his car over to retrieve his dropped cell phone; while his car was pulled over, he saw Anson pull up behind him and exit his car. Johnson admitted that he fled from Anson and saw Anson pursue him with activated lights and sirens. At his deposition, the attorney for MMRMA confronted Johnson with a police report that indicated that he initially told Kalamazoo Township Officer Christian Kloosterman that he did not know that Anson was pursuing him; Johnson stated that he did not remember making that statement and that he had marijuana in his system at the time he spoke with Kloosterman. Johnson stated at the deposition that he remembered Anson pursuing him before the collision. Johnson stated, "The whole time during the chase the police officer was right behind me."

Johnson testified initially that he may have accelerated to over 40 miles per hour (but not over 45 miles per hour), but then repeatedly testified that he did not believe that it "could have been over 40 miles per hour." Johnson denied going faster because of Anson's pursuit, but admitted to running the red light because he was being chased by the police.

The police investigation reports all refer to Anson being engaged in a "vehicle pursuit" and making a radio call indicating that he was in pursuit of a Pontiac Grand Prix. In one of the police reports, Kloosterman indicated that Johnson told him that he did not know that Anson was following him, but that Johnson later acknowledged to Kloosterman that he knew Anson was pursuing him with lights and siren activated.

State Farm moved for summary disposition pursuant to MCR 2.116(C)(10), with regard to the priority of MMRMA. State Farm argued that Johnson's deposition testimony, which had not been refuted, conclusively established that the police vehicle was "involved in" the accident

---

[6] QBE also sought declaratory relief from the Michigan Secretary of State and damages from Gray and Johnson; none of them are parties to this appeal. Since State Farm already was a party to the action in the lower court (and in fact was its initiator as plaintiff), QBE's claim against State Farm is more properly termed a counterclaim than a third-party complaint. See MCR 2.203; MCR 2.204.

because it was chasing Johnson's vehicle. State Farm then asserted that, because the police vehicle was involved in the accident, the insurer of the police vehicle was higher in priority under MCL 500.3114(5), and consequently was responsible for the payment of first-party no-fault benefits to Bongers.

In its response to State Farm's motion, MMRMA attached an affidavit from Larry D. Petersen, a mechanical engineer and accident reconstruction expert. Peterson opined that Grand Prix driven by Johnson could easily out-accelerate and out-distance the Prius driven by Anson. Peterson also noted that Johnson had successfully fled from police just two days before the accident and opined that Johnson had a demonstrated "predilection to attempt flight when stopped by police." Peterson opined that the manner in which Anson operated the Prius did not actively contribute to the accident; rather, he elaborated, the cause of the accident was Johnson's decision to flee from the police, that Anson was "in a situation where he was at best only able to radio in the Pontiac Grand Prix's travel direction" at the time of the accident, and that the "Toyota Prius Hybrid was neither designed for, nor capable of, nor in a position where it could dictate the driving decisions made by Mr. Johnson." Finally, Petersen opined that Bongers should have seen Johnson's vehicle speeding towards him given the available sightline and that Bongers' failure to see and yield to the Grand Prix before pulling out of a service station driveway was a contributing cause of the accident.

QBE also moved for summary disposition pursuant to MCR 2.116(C)(10). QBE asserted, inter alia, that it was entitled to rescind its policy of insurance provided to Gray because Gray had procured her policy by defrauding QBE. According to QBE, Gray had supplied false information on her application for insurance by affirmatively indicating that the Cutlass was registered to her, when in fact it was registered to Tina Poole, Gray's mother. Had Gray truthfully completed the application, QBE would never have issued the policy. Under such circumstances, QBE argued that it was entitled to rescind the insurance policy issued to Gray, and thus was entitled to be dismissed from the suit.

In support of its argument, QBE provided the application for insurance that had been submitted by Gray, which stated that the named insured "must be the registered owner" of the insured vehicle (the Cutlass). Gray had indicated on the application that she was the registered owner of the vehicle, when in fact the vehicle was registered to Poole. QBE argued that it would not have issued the policy had it been provided accurate information on the application. Gray testified at her deposition that she did not own the Cutlass.[7]

---

[7] QBE presented the trial court with an alternative argument that Gray had defrauded the Michigan Secretary of State and that Johnson was the true owner of the vehicle that struck Bongers. QBE also presented this argument in its application for leave to appeal; however the order granting leave to appeal limited this Court's consideration to the issue of whether QBE could rescind the policy based on Gray's alleged misrepresentation in applying for the policy of insurance. We therefore do not consider this argument. See MCR 7.205(E)(4) ("Unless otherwise ordered, the appeal is limited to issues raised in the application and supporting brief.")

Following a hearing, the trial court ruled that it was denying both QBE's and State Farm's motions for summary disposition. Regarding State Farm's motion, the trial court found that while it was not convinced by MMRMA's arguments, the question of "whether the police vehicle was in fact involved for purposes of establishing liability is something that should be presented to the trier of fact in this matter, namely the jury." Regarding QBE's motion, the trial court found that Gray "owned the 1999 Oldsmobile and therefore had insurance. She was therefore liable for the vehicle[8] that she nominally owned, the 1998 Grand Prix, which was ultimately driven by Mr. Johnson." The trial court further stated that "as a matter of law I do not believe QBE would be entitled to claim a rescission of those mandatory benefits set forth in the No-Fault Act by statute as they relate to innocent third-parties."

The trial court entered separate orders denying summary disposition to State Farm and QBE on December 4, 2013. With regard to State Farm's motion, the order stated that it was denied "for reasons stated on the record, including, but not limited to, that genuine issues of material fact remain as to the involvement of the motor vehicle operated by the Parchment Police Officer."[9] With regard to QBE's motion, the ordered stated that it was denied

> for the reasons stated on the record, including, but not limited to . . . [i]nsurance coverage required by statute, such as that of the No-Fault Act, MCL 500.3101, *et seq.*, cannot be rescinded after an innocent third party has sustained which is the subject of the coverage required by statute . . . .

The order also stated as an additional reason for denial that "[a]ny termination of the registration or title which may be available would not have retroactive effect, so as to alter the state of ownership or registration as of 08/12/2011."

State Farm's and QBE's applications for leave to appeal, which this Court granted, followed.

## II. DOCKET NO. 319709

In Docket No. 319709, State Farm argues that the trial court erred in failing to hold as a matter of law that Anson's vehicle was "involved" in the accident for the purposes of the no-fault act, see MCL 500.3114(5), and therefore that MMRMA (the insurer of Anson's vehicle) is at a higher level of priority than State Farm with regard to liability for personal protection insurance (PIP) benefits paid to Bongers. We agree.

We review a trial court's decision on a motion for summary disposition de novo. *Moser v Detroit*, 284 Mich App 536, 538; 772 NW2d 823 (2009). Summary disposition is proper under

---

[8] We presume that this is shorthand for "liable for PIP benefits paid as a result of the accident involving the vehicle" that Gray owned.

[9] Despite the order's use of the phrase "but not limited to," this Court is unable to discern any reason stated on the record for the denial other than the trial court's finding that a question of fact existed as to whether Anson's vehicle was "involved" in the accident.

MCR 2.116(C)(10) if "there is no genuine issue as to any material fact, and the moving party is entitled to judgment . . . as a matter of law." "A genuine issue of material fact exists when the record, giving the benefit of reasonable doubt to the opposing party, leaves open an issue upon which reasonable minds might differ." *West v Gen Motors Corp*, 469 Mich 177, 183; 665 NW2d 468 (2003). We consider the affidavits, pleadings, depositions, admissions, and other documentary evidence in the light most favorable to the nonmoving party. *Liparoto Constr, Inc v Gen Shale Brick, Inc*, 284 Mich App 25, 29; 772 NW2d 801 (2009). All reasonable inferences are to be drawn in favor of the nonmovant, *Dextrom v Wexford County*, 287 Mich App 406, 415; 789 NW2d 211 (2010). If it appears that the opposing party is entitled to judgment, the court may render judgment in favor of the opposing party. MCR 2.116(I)(2); *Bd of Trustees of Policemen & Firemen Retirement Sys v Detroit*, 270 Mich App 74, 77-78; 714 NW2d 658 (2006). A genuine issue of material fact exists when the record, giving the benefit of reasonable doubt to the opposing party, leaves open an issue upon which reasonable minds could differ. *Allison v AEW Capital Mgt, LLP*, 481 Mich 419, 425; 751 NW2d 8 (2008).

The question of whether a vehicle is "involved" in a motor vehicle accident so as to trigger entitlement to PIP benefits is a question of law which we review de novo on appeal. *Detroit Med Center v Progressive Mich Ins Co*, 302 Mich App 392, 396; 838 NW2d 910 (2013).

This suit is a dispute between no-fault insurers over their respective liability for first-party no-fault benefits. MCL 500.3114(5) provides:

> A person suffering accidental bodily injury arising from a motor vehicle accident which shows evidence of the involvement of a motor vehicle while an operator or passenger of a motorcycle shall claim personal protection insurance benefits from insurers in the following order of priority:
>
> (a) The insurer of the owner or registrant of the motor vehicle involved in the accident.
>
> (b) The insurer of the operator of the motorcycle involved in the accident.
>
> (c) The motor vehicle insurer of the operator of the motorcycle involved in the accident.
>
> (d) The motor vehicle insurer of the owner or registrant of the motorcycle involved in the accident.

At issue in Docket No. 319709 is whether Anson's police vehicle was "involved" in the accident that injured Bongers. Because the accident involved no physical contact between Bongers and the police vehicle, and the incident concerns the potential roles of multiple vehicles, whether the police vehicle was "involved" in the accident requires a determination under the principles announced in *Turner v Auto Club Ins Ass'n*, 448 Mich 22; 528 NW2d 681 (1995). *Auto Club Ins Ass'n v State Automobile Mutual Ins Co*, 258 Mich App 328, 340; 671 NW2d 328 (2003).

-6-

*Turner* involved an accident that occurred following a police chase of a stolen vehicle. *Turner*, 448 Mich at 25-26. Our Supreme Court set forth the following rationale for determining whether a vehicle was "involved" in a multi-vehicle accident despite lack of physical contact:

> [F]or a vehicle to be considered "involved in the accident" under § 3125, the motor vehicle, being operated or used as a motor vehicle, must actively, as opposed to passively, contribute to the accident. Showing a mere "but for" connection between the operation or use of the motor vehicle and the damage is not enough to establish that the vehicle was "involved in the accident." Moreover, physical contact is not required to establish that the vehicle was "involved in the accident," nor is fault a relevant consideration in the determination whether a vehicle is "involved in an accident." Finally, as already indicated by our discussion in part A, the concept of being "involved in the accident" under § 3125 encompasses a broader causal nexus between the use of the vehicle and the damage than what is required under § 3121(1) to show that the damage arose out of the ownership, operation, maintenance, or use of the motor vehicle as a motor vehicle. [*Turner*, 448 Mich at 39.]

Here, as in *Turner*, the instant case involves an officer who decided to pursue a vehicle with activated lights and sirens. Johnson testified that made the decision to flee Anson and knew he was being pursued.[10] Johnson further testified that Anson was "right behind" him for the whole chase, and admitted that he ran the red light because he was being pursued.

Petersen stated in his affidavit that Anson's vehicle was not capable of overtaking Johnson's or maintaining an effective pursuit. However, the fact that a fleeing vehicle is capable of outrunning the police vehicle does not mean that a pursuit is not occurring. Further, Johnson's unconverted testimony was that, notwithstanding the maximum speeds of which their respective vehicles were capable, Anson was "right behind" him for the entire pursuit, which he estimated occurred at speeds of approximately 40 miles per hour or less. Petersen's affidavit does not assert that a Toyota Prius is not capable of maintaining such speeds. The other opinions offered by Petersen in his affidavit concerning Johnson's predilection to flee from police or negligence on the part of Bongers have no bearing on the issue of Anson's vehicle's involvement. See *Turner*, 448 Mich at 39 (". . . nor is fault a relevant consideration in the determination whether a vehicle is 'involved in an accident.' ").

MMRMA's reliance on pre-*Turner* cases is misplaced. Notwithstanding the non-binding nature of these cases, MCR 7.215(J)(1), they were specifically distinguished by *Turner* as relating to single vehicle accidents, rather than multivehicle accidents arising out of the use of a motor vehicle other than the police vehicle. See *Turner*, 448 Mich at 35 n 10, citing *Sanford v Ins Co of North Am*, 151 Mich App 747; 391 NW2d 473 (1986); *Peck v Auto Owners Ins Co*, 112 Mich App 329; 315 NW2d 586 (1982). Further, MMRMA's argument, supported by Petersen's

---

[10] Although Johnson initially made the statement to Kloosterman that he did not know he was being pursued, he recanted that statement later in the same interview and admitted to knowledge of the pursuit.

affidavit, that unlike the car thief in *Turner*, Johnson formed the decision to flee while Anson was outside (and thus not operating) his vehicle, is a distinction without a difference. Even if Johnson's initial decision to flee was not prompted by Anson's use of a motor vehicle, his continuing flight, and specifically his decision to run the red light that caused the accident, certainly was. Anson's use of his vehicle therefore "prompted [Johnson] to ignore the red light and collide with the other vehicle[]." *Turner*, 448 at 42-43.

Even viewing the evidence in the light most favorable to MMRMA, *Liparoto Constr, Inc*, 284 Mich App at 29, there exists no material basis to distinguish this case from *Turner*. Nor is this Court at liberty to find that *Turner* was wrongly decided. See Const 1963, art 6, § 6; see also *DeFrain v State Farm Mut Auto Ins Co*, 491 Mich 359, 369; 817 NW2d 504 (2012). Nor would finding for defendant be as simple as ignoring *Turner* (which in any event neither the trial court nor this Court can do), as the test for vehicular involvement in *Turner* is based upon and comports with numerous other decisions of this Court that considered the meaning of the phrase "involved in the accident." *Turner*, 448 Mich at 38-39.

We therefore reverse the trial court's denial of State Farm's motion for summary disposition in Docket No. 319709, and remand for entry of summary disposition in favor of State Farm on this issue.[11]

## III. DOCKET NO. 319710

In Docket No. 319710, QBE argues that the trial court erred in ruling that the "innocent third-party rule" would bar rescission of the insurance policy issued to Gray. We disagree.

The trial court's ruling in effect granted summary disposition to MMRMA on the issue of QBE's liability for a portion of the PIP benefits paid to Bongers. This is because, if QBE were unable to rescind the policy, it would be the insurer of the titled owner and registrant of Johnson's vehicle (the Grand Prix), which was involved in the accident; QBE would thus be on the same level of priority as MMRMA as the insurer of the Parchment Police Department, the

---

[11] State Farm also argues that, if this Court reverses the trial court's denial, it is entitled to attorney fees and certain "loss adjustment costs" from MMRMA, which is a higher priority insurer because it processed and paid Bongers' no-fault benefits claim. This issue was not addressed in the trial court's order denying its motion. With respect to discretionary appeals by application, this Court only has jurisdiction to address issues arising from the order appealed. *City of Westland v Kodlowski*, 298 Mich App 647, 659-660; 828 NW2d 67 (2012), lv den in part and rev'd in part on other grounds 495 Mich 871 (2013). Moreover, the issue was not addressed by the trial court and no factual record was developed at the hearing on the issue. Under these circumstances, we decline to address the merits of State Farm's claimed entitlement to reimbursement and attorney fees. Any consideration of this issue or related issues dealing with the amount of no-fault benefits is premature and best left to a determination by the trial court in the first instance.

owner and registrant of Anson's Toyota Prius. See MCL 500.3114(5)(a), MCL 500.3115(1)(a). The fact that QBE did not insure the Grand Prix does not alter potential liability. *Farmers Ins Exch v Farm Bureau Ins Co*, 272 Mich App 106, 118-119; 724 NW2d 485 (2006). Thus, the trial court's ruling would, if undisturbed, result in QBE's liability for a pro-rata share of the PIP benefits paid to Bongers. See MCR 500.3114(6), MCR 500.3115(2).

This Court has generally denied an insurer's right to rescind a policy of insurance in order to avoid payment of no-fault benefits to an innocent third party:

> Where a policy of insurance is procured through the insured's intentional misrepresentation of a material fact in the application for insurance, and the person seeking to collect the no-fault benefits is the same person who procured the policy of insurance through fraud, an insurer may rescind an insurance policy and declare it void ab initio. *Cunningham v Citizens Ins Co of America*, 133 Mich App 471; 350 NW2d 283 (1984). However, this right to rescind ceases to exist once there is a claim involving an innocent third party. *Katinsky v Auto Club Ins Ass'n*, 201 Mich App 167, 170; 505 NW2d 895 (1993); *Darnell v Auto-Owners Ins Co*, 142 Mich App 1, 9; 369 NW2d 243 (1985). See also *Burton v Wolverine Mutual Ins Co*, 213 Mich App 514, 517, n 2; 540 NW2d 480 (1995). [*Hammoud v Metropolitan Property & Casualty Ins Co*, 222 Mich App 485, 488; 563 NW2d 716 (1997).]

Thus, "[o]nce an innocent third party is injured in an accident in which coverage was in effect with respect to the relevant vehicle, the insurer is estopped from asserting fraud to rescind the insurance contract." *Katinsky*, 201 Mich App at 170 (citation omitted).

However, QBE argues that this general rule (the "innocent third-party rule") was abrogated by *Titan Ins Co v Hyten*, 491 Mich 547; 817 NW2d 562 (2012). We disagree. In *Titan*, our Supreme Court held that an excess insurance carrier may avail itself of the equitable remedy of reformation (of contract) to avoid liability under an insurance policy on the ground of fraud in the application for insurance, even though the fraud was easily ascertainable and the claimant is a third party, so long as the remedies are not prohibited by statute. *Id*. at 550, 554, 558, 571.

Bongers's entitlement to PIP benefits is statutory, however, not contractual. See *Harris v ACIA*, 494 Mich 462, 472; 835 NW2d 356 (2013); MCL 500.3114(5). The insurer in *Titan* did not seek to avoid payment of statutorily mandated no-fault benefits; in fact, that insurer acknowledged its liability for the minimum liability coverage limits. *Id*. at 552 n 2. Nor did *Titan* address a claim for PIP benefits from an innocent third party. Thus, the holding of *Titan*, that an insurance carrier may seek reformation to avoid liability for *contractual* amounts in excess of statutory minimums, does not compel a finding that *Titan* overruled the many binding decisions of this Court applying the "innocent third-party rule" in the context of PIP benefits and an injured third party who is statutorily entitled to such benefits. *Id*. at 552. QBE has provided this Court with no authority for the proposition that *Titan* overruled these decisions. We

therefore affirm the trial court's denial of summary disposition in Docket No. 319710 relative to the "innocent third-party rule."[12]  We do not address the additional grounds for denial cited by the trial court.

Reversed in Docket No. 319709, and affirmed in Docket No. 319710.  Remanded for further proceedings consistent with this opinion.  We do not retain jurisdiction.

/s/ Michael J. Riordan
/s/ William B. Murphy
/s/ Mark T. Boonstra

---

[12] Because we hold that even in the event of fraud, the "innocent third-party rule" would estop QBE from seeking rescission of the policy to avoid liability for Bongers's PIP benefits, we do not address the parties' arguments concerning whether Gray actually committed fraud, which, in any event, was not decided by the trial court in the first instance.