# STATE OF MICHIGAN

# COURT OF APPEALS

TYANN SHELTON,

          Plaintiff-Appellee,

and

DWAYNE WILLIAMS,

          Plaintiff,

and

MICHIGAN CRNAS STAFFING, LLC,

          Intervening Plaintiff,

v

AUTO-OWNERS INSURANCE COMPANY,

          Defendant-Appellant.

FOR PUBLICATION
February 14, 2017
9:00 a.m.

No. 328473
Wayne Circuit Court
LC No. 13-010612-NF

Before: K. F. KELLY, P.J., and GLEICHER and SHAPIRO, JJ.

SHAPIRO, J.

In this No-Fault personal injury protection (PIP) case, defendant sought summary disposition based upon a fraud exclusion clause in its policy. Defendant asserted that plaintiff made fraudulent statements concerning her need for replacement services and so was excluded by the policy from all PIP benefits. The trial court granted summary disposition as to replacement services, a ruling from which plaintiff has not appealed.[1] The trial court denied the

---

[1] The record does not make clear the basis for the dismissal of the replacement services claim. Defendant asserts that the trial court's decision implies that the court made a finding of fraud, and plaintiff argues the decision was based on a lack of proofs for the replacement services claim. Defendant refers us to the trial courts remark during the hearing that she "[doesn't] like people misrepresenting the truth." However, the court also stated that after a review of the

-1-

motion as to payment for medical services and from that ruling, defendant appeals by leave granted.[2] We affirm.

Shelton alleges she was injured in a single-car collision on January 22, 2013. The vehicle was owned and operated by Timothy Williams; Shelton was a passenger. She sought PIP benefits from defendant because she did not own a vehicle nor reside with a relative who did. Thus, defendant, as Williams's insurer, was to provide her with those PIP benefits to which she was entitled under the No-Fault Act. MCL 500.3114(4)(a). Plaintiff claimed PIP benefits that included medical expenses and replacement services for household chores, beginning in January 2013.[3] Defendant denied the claim and plaintiff brought suit.

Defendant moved for summary disposition asserting that plaintiff was not entitled to PIP benefits under an exclusionary clause in the policy reading:

> We will not cover any person seeking coverage under this policy who has made fraudulent statements or engaged in fraudulent conduct with respect to procurement of this policy or to any **OCCURRENCE** for which coverage is sought.

Defendant argues that this policy exclusion applies to plaintiff despite the fact that she is not a policyholder, and that the evidence demonstrates beyond a question of fact that plaintiff engaged in fraud as defined in the policy. Defendant relies largely on *Bahri v IDS Prop Cas Ins Co*, 308 Mich App 420, 423-426; 864 NW2d 609 (2014), in which we held that a fraud provision in an insurance contract could bar a claim for PIP benefits when the policyholder filed a claim for replacement services for a date prior to the subject accident. However, both the law and the facts of this case differ substantially from those that existed in *Bahri*.

---

plaintiff's deposition she could not conclude that plaintiff lied. And in making its ruling, the trial court did not cite or discuss the elements of fraud, make findings regarding those elements, or even use the word "fraud." Neither party asked the court to clarify its ruling or to make a finding of fraud. Because the dismissal of the replacement services claim has not been appealed we need not address it further.

[2] *Shelton v Auto-Owners Ins Co*, unpublished order of the Court of Appeals, entered December 21, 2015 (Docket No. 328473).

[3] Before the trial court, defendant also argued that plaintiff fraudulently misrepresented her pre-accident history by failing to disclose that she made a PIP claim following a 2005 accident. The trial court rejected the argument regarding the prior auto accident noting that plaintiff's statement about the 2005 accident could have simply been a mistake or a failure of memory and that "it really becomes an issue for the jury to decide whether or not she's credible." Defendant has not argued on appeal that the trial court erred in its ruling as to the 2005 claim. Moreover, the materials submitted by defendant with its brief on appeal relevant to the 2005 claim are not in the lower court record and were stricken, with consent, at oral argument.

The law governing application of the policy exclusion in *Bahri* is not applicable in this case. In *Bahri*, the provision applied to the plaintiff in that case because "defendant issued [the subject] no-fault automobile policy to [the] plaintiff." *Bahri*, 308 Mich App at 421. In this case, however, plaintiff was not a party to, nor an insured under, the policy; she was injured while a passenger and because neither she nor her spouse or resident relative had a no-fault policy, defendant was required to pay her benefits pursuant to statute, not pursuant to a contractual agreement.

The Michigan Supreme Court stated in *Rohlmanv Hawkeye Security*, 442 Mich 520, 524-525; 502 NW2d 310 (1993), that

> "PIP benefits are mandated by statute under the no-fault act, MCL 500.3105; MSA 24.13105, and, therefore, the statute is the 'rule book' for deciding the issues involved in questions regarding awarding those benefits. On the other hand, the insurance policy itself . . . is the contract between the insurer and the insured . . . ."

The Supreme Court adhered to this principle in *Harris v Auto Club Ins Ass'n*, 494 Mich 462, 471-472; 835 NW2d 356 (2013), a case involving a motorcycle-automobile collision. MCL 500.3114(5)(a), using language paralleling the language used in MCL 500.3114(4)(a), provided that if the injured motorcyclist, his spouse or a resident relative did not have a no-fault policy then his no-fault benefits would be paid by the insurer of the owner or registrant of the automobile. In *Harris*, the Court stated that plaintiff could not take advantage of the uncoordinated medical benefit provision in the policy because his claim did not flow from the subject policy, but "solely by statute." *Harris*, 494 Mich at 472 The Court held that:

> [The plaintiff] is not claiming benefits under a no-fault insurance policy that he or anyone else procured. [He] is neither a third-party beneficiary nor a subrogee of the no-fault policy issued to the person that struck him and thus he [was] not eligible to receive benefits under that policy. Rather, [the plaintiff's] right to PIP benefits arises solely by statute. [*Id*.]

Defendant's argument is directly contrary to the grounds for the holdings in both *Rohlman* and *Harris*. Here, as in those cases, plaintiff's no-fault benefits are governed "solely by statute." Thus, the exclusionary provision in defendant's no-fault policy does not apply to plaintiff and cannot operate to bar plaintiff's claim.

This is also consistent with the text of the relevant statutes. "The primary rule of statutory construction is that, where the statutory language is clear and unambiguous, the statute must be applied as written." *Cruz v State Farm Mut Auto Ins Co*, 466 Mich 588, 594; 648 NW2d 591 (2002). Additionally, the "primary task in construing a statute is to discern and give effect to the intent of the Legislature." *Farmers Ins Exch v Farm Bureau Gen Ins Co*, 272 Mich App 106, 111; 724 NW2d 485 (2006) (citation and quotations omitted). "[A] court must give effect to every word, phrase, and clause and avoid a construction that would render any part of the statute surplusage or nugatory." *Id*.

Under Subsection 1 of the no-fault priority statute, "a personal protection insurance policy . . . *applies* to the person named in the policy, the person's spouse, and a relative of either domiciled in the same household." MCL 500.3114(1) (emphasis added). Plaintiff is not an individual named in defendant's policy, a person named in the policy's spouse, or a relative of either the person named in defendant's policy or his spouse. Therefore, pursuant to the statute, defendant's policy does not "apply" to plaintiff. Rather, plaintiff received no-fault benefits pursuant to Subsection 4, which reads:

> Except as provided in subsections (1) to (3), a person suffering accidental bodily injury arising from a motor vehicle accident while an occupant of a motor vehicle shall claim personal protection insurance benefits from insurers in the following order of priority:
>
> (a) The insurer of the owner or registrant of the vehicle occupied.
>
> (b) The insurer of the operator of the vehicle occupied. [MCL 500.3114(4).]

Subsection (4) does not state that the owner or operator's insurance policy "applies" to the passenger's claim for benefits, and its text, unlike that of Subsection (1), omits any mention of a personal protection insurance *policy,* instead providing that the injured person is to "claim personal protection insurance benefits from insurers," beginning with "[t]he insurer of the owner or registrant of the vehicle occupied." MCL 500.3114(4)(a).

Defendant argues that as a matter of public policy we should depart from the statute because if we do not, no-fault insurers will lose the ability to deny fraudulent no-fault claims. This argument is meritless. As always, if an insurer concludes that a claim is fraudulent, it may deny the claim.[4] Should the claimant then file suit, the burden is on the claimant to prove that he is entitled to his claimed benefits, a burden that is highly unlikely to be met if the factfinder concludes that the claim is fraudulent.[5] And insurers can obtain attorney fees for having to litigate any claims that are determined to be fraudulent. MCL 500.3148.

---

[4] This Court has long held that insurers should be afforded an opportunity to review claims for lack of coverage, excessiveness, and fraud. *Advocacy Org for Patients & Providers v Auto Club Ins Ass'n*, 257 Mich App 365, 378; 670 NW2d 569 (2003).

[5] MCL 500.3107(1), subsections (a), (b) and (c), respectively require plaintiff to prove: that the medical expenses were "reasonable charges incurred for reasonably necessary [medical care]," that the costs for replacement services were "reasonably incurred in obtaining ordinary and necessary services," and that plaintiff has lost "income from work [he or she] would have performed during the first 3 years from the date of the accident if he or she would not have been injured."

This case also presents very different facts than did *Bahri*.[6]  In *Bahri*, the insurer presented unrebutted evidence (a) that plaintiff claimed replacement services benefits for three weeks *before the auto accident even occurred*; and (b) that over a period of seven weeks she repeatedly engaged in a wide range of chores on the days for which she claimed that someone else did them for her.  308 Mich App at 425-426.  In this case, it is clear that a questions of fact exist as to whether plaintiff made material misrepresentations and, if so, whether they were made with the intent to defraud defendant.

Reliance on an exclusionary clause in an insurance policy is an affirmative defense and so defendant has the burden of proof.  An "insurance company has the burden to prove that one of the policy's exclusions applies."  *Auto Owners Ins Co v Seils*, 310 Mich App 132, 146; 871 NW2d 530 (2015).  Thus, to obtain summary disposition the insurer must show that there is no question of material fact as to any of the elements of its affirmative defense.  The elements, as set forth in *Bahri*, are as follows:

---

[6] We note that the policy language in the instant case differs significantly from that in *Bahri*, 308 Mich App at 424-425.  In *Bahri*, the exclusion read: "We do not provide coverage for any insured who has made fraudulent statements or engaged in fraudulent conduct in connection with any accident or loss for which coverage is sought under this policy."  *Id*. at 423-424.  The exclusion in this case states:

> We will not cover any person seeking coverage under this policy who has made fraudulent statements or engaged in fraudulent conduct *with respect to procurement of this policy or to any* **OCCURRENCE** for which coverage is sought.  [Emphasis added.]

Defendant has not provided us with the policy definition of "occurrence," but in all cases dealing with the term, it has been defined as the accident or event during which the injury occurs.  See, e.g. *Frankenmuth Mut Ins Co v Masters*, 460 Mich 105, 112-113; 595 NW2d 832 (1999) (stating that the applicable insurance policy defined the term "occurrence" as "an accident, . . . which occurs during the policy period"), *Group Ins Co v Czopek*, 440 Mich 590, 597-598; 489 NW2d 444 (1992) (stating that the term "occurrence" was defined in the policy as "an accident, . . . which results, during the policy term, in bodily injury or property damage."), and *Mich Basic Prop Ins Ass'n v Wasarovich*, 214 Mich App 319, 327-328; 542 NW2d 367 (1995) (finding that the definition of "occurrence" in the policy included an accident that resulted in personal injury during the policy period).  Defendant has not alleged any fraud "with respect to the procurement of the policy" nor with respect to the "occurrence."  The claimed fraud was in the reporting of services later provided, an event not referenced in the provision.   However, as the issue was not considered below we decline to rule on this basis. *Mich Ed Ass'n v Secretary of State*, 280 Mich App 477, 488; 761 NW2d 234 (2008), aff'd 489 Mich 194 (2011); *People v Byrne*,  199 Mich App 674, 677; 502 NW2d 386 (1993).

"To void a policy because the insured has wilfully misrepresented a material fact, an insurer must show that (1) the misrepresentation was material, (2) that it was false, (3) that the insured knew that it was false at the time it was made or that it was made recklessly, without any knowledge of its truth, and (4) that the insured made the material misrepresentation with the intention that the insurer would act upon it. A statement is material if it is reasonably relevant to the insurer's investigation of a claim. [*Mina v Gen Star Indemnity Co,* 218 Mich App 678, 686; 555 NW2d 1 (1996), rev'd in part on other grounds 455 Mich. 866, 568 N.W.2d 80 (1997) (citation omitted).]" [*Bahri*, 308 Mich App at 424–25.]

We review de novo motions for summary disposition under MCR 2.116(C)(10). *Dressel v Ameribank*, 468 Mich 557, 561; 664 NW2d 151 (2003). In doing so, we are required to view the affidavits, pleadings, depositions, admissions, and other documentary evidence in the light most favorable to the nonmovant. *Liparoto Constr, Inc v Gen Shale Brick, Inc*, 284 Mich App 25, 29; 772 NW2d 801 (2009). Similarly, all reasonable inferences must be drawn in favor of the nonmovant. *Dextrom v Wexford Co*, 287 Mich App 406, 415; 789 NW2d 211, lv den 488 Mich 853 (2010). Summary disposition is only appropriate under MCR 2.116(C)(10) when there is no genuine issue with respect to any material fact and the moving party is entitled to judgment as a matter of law. *Maiden v Rozwood*, 461 Mich 109, 120; 597 NW2d 817 (1999). "A genuine issue of material fact exists when the record, giving the benefit of reasonable doubt to the opposing party, leaves open an issue upon which reasonable minds could differ." *West v GMC*, 469 Mich 177, 183; 665 NW2d 468 (2003).

In support of its motion, defendant relied on an investigator's reports and some photographs counsel represents were taken by the investigator on June 1.[7] Defendant argues that the photographs and investigator's reports are sufficient to establish beyond a question of fact that defendant committed fraud despite the testimony, medical reports, and affidavits that support plaintiff's claim of injury and need for medical care and assistance. We disagree. First, many of the photographs are so blurred and distant that it is impossible to determine who is being photographed and what they are doing. Second, the descriptions in defendant's brief are at times inconsistent with the investigator's reports. For example, defendant's brief states that on June 1

---

[7] While not raised in the briefing, based on the record before us it appears that many of the documents on which defendant relies including the three surveillance reports and the photographs, do not meet the evidentiary requirements of MCR 2.116(G)(6) and should not have been considered. That rule provides that "affidavits, depositions, admissions and documentary evidence offered in support of or in opposition to a motion based on subrule (C)(1)-(7) or (10) *shall only be considered to the extent that the content or substance would be admissible as evidence*." (emphasis added). The relied upon reports appear to be hearsay. Their ostensible author did not testify and has not provided an affidavit that the statements in his reports are true and that he will so testify at trial. The same is true of the photographs on which defendant relies.

-6-

plaintiff "is observed outstretching both of her arms above her head to lift and pass a child." However, the investigator's report dated June 1, 2013 states that the "claimant" being observed is "Timothy Williams," not plaintiff, and all of the report's references to "the claimant" use the pronoun "he." The only person that the report identifies as being "observed lifting the toddler" is Williams.[8] The only women referred to in that report are two "female subject[s]" neither of whom are identified in the report as plaintiff despite the fact that plaintiff had been watched by this investigator on two prior occasions. Moreover, the only photographs submitted by defendant are dated June 1, 2013, the date that the report does not identify plaintiff as being present.

Defendant also argues that plaintiff fraudulently claimed assistance with doing laundry on June 1, because the investigator's report states that on that date he saw plaintiff wringing out a shirt while on the front lawn of her home.[9] A single instance of a single shirt being wrung out does not demonstrate beyond question that plaintiff can operate a washer or dryer, carry loads of laundry or the like. Nor does it conclusively demonstrate an intent to defraud. Similarly, the fact that plaintiff was seen walking without a visible brace[10] and was observed to bend on two occasions does not establish beyond a question of fact that she has defrauded defendant.[11] By contrast, as noted above, the insurer in *Bahri* presented uncontested evidence (a) that plaintiff claimed replacement services benefits for three weeks before the auto accident even occurred; and (b) that over a period of seven weeks she repeatedly engaged in a wide range of chores on the days for which she claimed that someone else did them for her. 308 Mich App at 425-426. While such repeated activities are sufficient to establish the elements of fraud beyond a question of fact, a single episode of wringing out a shirt does not; nor do isolated examples of an injured person participating in simple physical actions such as bending, modest lifting, or other basic physical movements that they testify are painful or difficult. These types of inconsistencies with a claimant's statements are not sufficient to establish any of the elements of fraud beyond a question of fact.

---

[8] The report states, "The claimant is also observed lifting the toddler and shaking him as he is playing with the toddler."

[9] In fact, the report is equivocal as to this fact, stating that plaintiff "*appears* to be wringing it out." (emphasis added). And there is no reference to any photographs or videotape to confirm even this self-serving statement.

[10] Plaintiff testified that she is able to walk. She also testified that she always wore a back brace but stated that sometimes she wore it under her clothing and sometimes over.

[11] Defendant's brief refers us to a passage in plaintiff's deposition that is not in the record in support of its position. On that page plaintiff states that she "normally" wears a back brace and that if wearing a loose fitting shirt she wears it under her shirt. Defendant also refers us to one of the June 1, 2013 photos in which a woman is seen carrying what appears to be a small plastic bag (contents unknown) and argues this was inconsistent with her deposition testimony. However, plaintiff testified that she could walk to nearby stores and that she could lift a bag containing five regular size cans of vegetables.

Defendant raises an alternative argument in its reply brief, claiming that plaintiff's no-fault claim is barred by the wrongful-conduct rule. However, "[r]eply briefs must be confined to rebuttal, and a party may not raise new or additional arguments in its reply brief." *Kinder Morgan Michigan, LLC v City of Jackson*, 277 Mich App 159, 174; 744 NW2d 184 (2007), citing MCR 7.212(G). Accordingly, we need not reach the issue. However, were we to do so, we would reject the argument. The wrongful conduct rule applies to activities or behavior that occur prior to, and are causative of, the injury.[12] See *Cervantes v Farm Bureau Gen Ins Co*, 272 Mich App 410, 417; 726 NW2d 73 (2006) (stating that "the wrongful conduct rule only applies if a plaintiff's wrongful conduct is a proximate cause of his injuries") and see *Orzel v Scott Drug Co*, 449 Mich 550, 558; 537 NW2d 208 (1995) ("[The plaintiff's] injury must have been suffered while and as a proximate result of committing an illegal act.") (internal quotations and citations omitted). Defendant makes no such claim here.

Affirmed. We do not retain jurisdiction.


/s/ Douglas B. Shapiro
/s/ Elizabeth L. Gleicher

---

[12] Defendant's brief provides no citation to cases applying the wrongful conduct rule as it seeks to do. And when asked at oral argument for supporting caselaw, defendant could provide none.