WARREN'S STATION, INC v CITY OF BRONSON

Docket No. 213934. Submitted November 9, 1999, at Grand Rapids. Decided May 30, 2000, at 9:05 A.M.

Warren's Station, Inc., brought an action in the Branch Circuit Court against the city of Bronson and National Oil & Gas, Inc., seeking an injunctive order requiring National to obtain a special land-use permit before it could use its land for the retail sale of gasoline. National owned property adjacent to plaintiff's property in the city of Bronson and had sought and received a construction permit from the city to remodel existing structures to include two fast-food restaurants, a convenience store, and eight self-serve gasoline pumps. The plaintiff sought to enjoin National from making the improvements, arguing that National needed a special land-use permit in order to sell gasoline on the property. Both the plaintiff and National filed motions for summary disposition. During the pendency of the consideration of those motions, National sought and received from the city a special land-use permit for the use of the property as a convenience store with self-service gasoline sales and restaurants. Thereafter, the court, Michael H. Cherry, J., granted the plaintiff's request for injunctive relief and ordered National to obtain a special land-use permit. National appealed.

The Court of Appeals *held*:

1. Although this appeal is technically moot because National had already been issued a special land-use permit by the time the injunctive order in this case had been issued requiring National to obtain such a permit, the issues raised in this appeal merit discussion, because the proliferation of combined gasoline station/convenience store/restaurants makes it likely that the issues presented in this appeal will arise again.

2. The land in question was zoned a B-3 zoning district under the Bronson zoning ordinance. The Bronson zoning ordinance allows "retail sales" and "fuel supply yards" in B-3 districts; however, the ordinance does not specifically include "gasoline station" or "service station" within the list of permitted uses in B-3 districts. On the contrary, the ordinance expressly requires that a special land-use permit be obtained before a "service station" can be located within a B-3 district and defines "gasoline service station" as "[a]ny

building or structure designed or used for the retail sale or supply of fuel, lubricants, air, water or other operating commodities for motor vehicles, and including the customary space and facilities for the installation or furnishing of such commodities."

3. National's assertion that it did not need to secure a special land-use permit for its proposed retail sale of gasoline because the proposed use was not a service station within the meaning of the zoning ordinance by reason of the fact that no vehicles would be serviced at the location is without merit. The phrase "gasoline service station" is plain and unambiguous and clearly comprehends a place at which vehicles are given service that consists only of supplying them directly with oil, gasoline, and accessories. Accordingly, under the clear language of the ordinance, National's proposed use for the property was a gasoline service station for which a special land-use permit was required, and the circuit court properly issued the injunctive order requiring that National secure the special land-use permit before it proceeded with its proposed use of the property.

4. The question whether the proposed retail sale of gasoline was an "accessory use" within the meaning of the Bronson zoning ordinance was not addressed by the circuit court and, thus, need not be addressed on appeal.

Affirmed.

WORDS AND PHRASES — GASOLINE SERVICE STATIONS — ZONING.

The phrase "gasoline service station" as used in a zoning ordinance that defines that phrase as a building designed for the retail sale or supply of fuels and lubricants is plain and unambiguous and clearly comprehends a place at which vehicles are given service that consists only of supplying them directly with oil, gasoline, and accessories.

*Bird, Svendsen, Brothers & Scheske, P.C.* (by *Roger A. Bird*), for the plaintiff.

*Beckman Lawson LLP* (by *Frank J. Gray* and *Lisa M. Green*), for National Oil & Gas, Inc.

Before: ZAHRA, P.J., and KELLY and MCDONALD, JJ.

KELLY, J. Defendant National Oil & Gas, Inc. (National), appeals as of right from the trial court's injunctive order requiring National to obtain a special

land-use permit for the retail sale of gasoline. We affirm.

Plaintiff owns and operates a service station with a convenience store located in Bronson. National sought to remodel existing structures on property it owned adjacent to plaintiff's, which improvements would include two fast-food restaurants, a convenience store, and eight self-serve gasoline pumps. Defendant city of Bronson issued a construction permit on its finding that the proposed construction fit within the B-3 zoning for National's property. On May 1, 1998, plaintiff sought to enjoin National from making the improvements and argued that National needed a special land-use permit to sell gasoline on the property. Plaintiff and National filed cross-motions for summary disposition, and the court heard oral arguments on June 26, 1998.

Before the court issued its ruling on the cross-motions for summary disposition, National filed a petition for a special land-use permit with the city, proposing to use the property as a convenience store with self-service gasoline sales and restaurants. After notice and public comment, the city planning commission granted the permit. The circuit court thereafter affirmed.[1]

On August 5, 1998, the circuit court granted plaintiff's request for injunctive relief and ordered National to obtain the permit. On August 26, 1998, National filed this appeal as of right of the court's injunctive order. However, because the special use permit had already been issued before the circuit court issued its

---

[1] This Court has since granted plaintiff leave to appeal that decision in Docket No. 220921.

ruling, this appeal technically is moot because National essentially has gotten the relief its seeks, i.e., permission to conduct retail sales of gasoline from its property. *Michigan Nat'l Bank v St Paul Fire & Marine Ins Co*, 223 Mich App 19, 21; 566 NW2d 7 (1997). Nevertheless, because the proliferation of combined gasoline station/convenience store/ restaurants makes it likely that the issues presented here will arise again, we will address National's claims. *In re Parole of Franciosi*, 231 Mich App 607, 615; 586 NW2d 542 (1998).

National argues that the sale of gasoline is a permitted use in a B-3 Community Commercial District for either of two reasons: (1) the retail sale of gasoline is a "retail sale" as contemplated by the zoning, or (2) it is sufficiently similar to "fuel supply yards" to be a permitted use. National also argues that the retail sale of self-service gasoline is an accessory use to convenience stores.

This Court reviews a trial court's decision on a motion for summary disposition de novo as a matter of law. *Miller v Farm Bureau Mut Ins Co*, 218 Mich App 221, 233; 553 NW2d 371 (1996). When reviewing a decision on a motion under MCR 2.116(C)(10), we must examine all relevant documentary evidence in the light most favorable to the nonmoving party to determine whether a genuine issue of material fact exists on which reasonable minds could differ. *Shirilla v Detroit*, 208 Mich App 434, 437; 528 NW2d 763 (1995). Where the moving party has produced evidence in support of the motion, the opposing party bears the burden of producing evidence to establish that a genuine question of material fact exists. MCR 2.116(G)(4). A motion for summary disposition pur-

suant to MCR 2.116(C)(10) tests the factual support for a claim and should be granted only when it is impossible for the claim to be supported at trial because of a deficiency that cannot be overcome. *Holland v Liedel*, 197 Mich App 60, 64; 494 NW2d 772 (1992).

The rules applicable to statutory construction also apply to the construction of ordinances. *Albright v Portage*, 188 Mich App 342, 350; 470 NW2d 657 (1991). Thus, the primary goal of the interpretation of ordinances is to give effect to the intent of the legislative body. *Farrington v Total Petroleum, Inc*, 442 Mich 201, 212; 501 NW2d 76 (1993). We must first examine the specific language used by the legislative body in the ordinance. *House Speaker v State Administrative Bd*, 441 Mich 547, 567; 495 NW2d 539 (1993). If the plain and ordinary language is clear, then judicial construction is normally neither necessary nor permitted. *Lorencz v Ford Motor Co*, 439 Mich 370, 376; 483 NW2d 844 (1992). We review a lower court's interpretation of the meaning of an ordinance de novo. *Ballman v Borges*, 226 Mich App 166, 168; 572 NW2d 47 (1997).

The trial court found that although the inartfully drafted ordinance left something to the imagination, the umbrella of "retail sales" was not so broad as to cover the sale of gasoline. The court found that the drafters of the ordinance contemplated two distinct forms of commerce: the traditional gasoline service station and other retail operations, such as clothing stores. The court ruled that the nongasoline retail functions of the facility, i.e., convenience store, restaurant, and Laundromat, were clearly permitted under the B-3 zoning. However, to the extent that the

operation contemplated the sale of gasoline, a special use permit was required. We agree.

The zoning ordinance allows "retail sales" and "fuel . . . supply yards" without restriction within a district zoned B-3. Bronson Zoning Ordinance, § 25-B. However, the B-3 zoning does not specifically include "gasoline station" or "service station" within the list of permitted uses. We will not legislate by adding language to the ordinance to include gasoline stations or service stations within the B-3 zoning. *Empire Iron Mining Partnership v Orhanen*, 455 Mich 410, 421; 565 NW2d 844 (1997).

On the contrary, the zoning ordinance expressly requires a special use permit for service stations located within a B-3 district: "No land or building shall be used as a service station or an automobile repair shop unless located in the B-2, B-3 or I Districts as a Special Land use . . . ." Bronson Zoning Ordinance, § 112-I. The Bronson zoning ordinance defines "gasoline service station" as "[a]ny building or structure designed or used for the retail sale or supply of fuels, lubricants, air, water or other operating commodities for motor vehicles, and including the customary space and facilities for the installation or furnishing of such commodities . . . ." Bronson Zoning Ordinance, § 05-V.[2]

National argues that the special land-use requirement does not apply to its proposed development because the retail sale of gasoline does not fall under the definition of "service station" because no vehicles

---

[2] The Bronson ordinance separately defines "garage service" as "[a]ny building or structure designed or used for the hire, sale, storage, service, repair or refurbishing of motor vehicles . . . ." Bronson Zoning Ordinance, § 05-U.

will be serviced at the location. We find this argument unpersuasive.

The phrase "gasoline service station" is plain and unambiguous. As noted by the Supreme Court of New Jersey:

> [T]he words "service station" mean a place where service is rendered, and, taken in connection with the words "motor vehicles," must mean any place where service is customarily rendered to motor vehicles. Undoubtedly the phrase comprehends a place at which automobiles or motor vehicles are given service, *even though it consist only of supplying them directly with oil, gas, and accessories.* [*Bauer v Bd of Fire & Police Comm'rs*, 102 NJL 235, 238; 132 A 515 (1926) (emphasis added)].

Decisions from other jurisdictions in related contexts have generally held that the clause "service station" includes places where gasoline, oil, and other automobile necessities are sold without a requirement that automobiles also be repaired or maintained. *Hammond, Indiana v Indiana's Last Real Estate Development Corp*, 923 F Supp 1097, 1100-1101 (ND IN, 1996) (term "motor vehicle service" includes both gasoline sales and automobile repair); *Eubanks v Bd of Adjustment, Kirkwood*, 768 SW2d 624, 628 (Mo App, 1989) (convenience store with gasoline pumps more closely resembled service station than food store under ordinance); *Southland Corp v Minneapolis*, 279 NW2d 822, 826 (Minn, 1979) (service station includes places where gasoline is sold); *V S H Realty, Inc v Zoning Hearing Bd of Sharon Hill*, 27 Pa Commw 32, 35; 365 A2d 670 (1976) (plain meaning of term as listed in Webster's Dictionary includes the retail sale of gasoline); *Alberga v Pennsylvania Indemnity Corp*, 114 Pa Super 42, 48; 173 A 697

(1934) (service station means place where service is rendered, even if only by supplying oil, gasoline, and accessories). This Court, in the context of a restrictive covenant, has held that the construction of underground gasoline storage tanks and the installation of pumps for the sale of gasoline in conjunction with an automobile wash business constitutes a service station. *Sun Oil Co v Trent Auto Wash, Inc*, 23 Mich App 78, 80; 178 NW2d 88 (1970). We agree.

Like National, the plaintiff in *Southland Corp, supra*, who was the owner of a 7-Eleven convenience store, argued that self-service pumps are not "automobile service stations" because no automobile maintenance or service is provided and because the 7-Eleven store was not primarily engaged in the business of servicing automobiles. The Supreme Court of Minnesota held that a self-service gasoline dispensing facility at a 7-Eleven convenience store was an automobile service station within the meaning of the city's urban renewal plan. We find the Minnesota court's reasoning applicable here:

> To adopt a view that automobile service stations must fit the historic concept of such facilities is to . . . ignore the facts as they exist today. The traditional separation of services is now blurred as many facilities which would originally have qualified as service stations . . . would be jeopardized because of the variety of merchandising that occurs at such facilities and the elimination of any traditional services at such facilities. Likewise, self-service gasoline sales have become a large part of the industry. [*Southland Corp, supra* at 825-826.]

The proposed retail sale of gasoline unquestionably is a special use for land located within the B-3 district as contemplated by Bronson Zoning Ordinance, §§ 25-

C and 112-I. There is no requirement in the ordinance that the facility also provide repair or maintenance services, or that the building be used primarily for the retail sale of gasoline, to constitute a special use. Under the clear language of the ordinance and the ordinary understanding of the phrase "gasoline service station," National was required to obtain a special use permit for its proposed retail sale of gasoline.

National also argues that the retail sale of gasoline was a permitted "accessory use," which is defined as "[a]ny use customarily incidental to the main use of the premises." Bronson Zoning Ordinance, § 05-B. The trial court did not reach this issue and, because it entails a factual determination whether the sale of gasoline incidental to a restaurant, Laundromat, and convenience store is customary in Bronson, we decline to address it here.

Affirmed.