# STATE OF MICHIGAN

# COURT OF APPEALS

CITY OF GRAND RAPIDS,

      Plaintiff-Appellee/Cross-Appellant,

v

ARATH III, INC.,

      Defendant-Appellant/Cross-
Appellee,

and

CONSUMERS ENERGY COMPANY,

      Defendant-Appellee.

UNPUBLISHED
June 26, 2018

No. 337920
Kent Circuit Court
LC No. 14-009558-CH

Before: MURRAY, C.J., and MARKEY and TUKEL, JJ.

PER CURIAM.

In this appeal centered on determining liability for maintenance of a sidewalk area, both plaintiff, city of Grand Rapids, and defendant Arath III, Inc., moved for summary disposition. As to Count III of the city's six-count complaint, the trial court entered an order which granted in part the parties' competing motions for summary disposition pursuant to MCR 2.116(C)(10). The trial court awarded summary disposition in favor of Arath as to the remaining five counts. Arath appeals the order by right, and the city cross-appeals. For the reasons provided below, we affirm in part, reverse in part, and remand for further proceedings.

## I. FACTS

Effective July 1, 2015, following the passage of a voter-approved initiative, the city assumed responsibility to maintain, repair, and rebuild sidewalks within its jurisdiction. The dispute in this case involves which party is responsible for repairing a sidewalk that is directly above an areaway that is part of the Keeler Building, a vacant commercial building in Grand Rapids owned by Arath.

In 1995, Arath purchased the Keeler Building. The Keeler Building was constructed in 1912 and is located at the corner of Division Avenue and Fountain Street. The Keeler Building

-1-

was constructed with an areaway, which is "an extended basement of a building within the street right-of-way." Grand Rapids Code, tit IV, ch 52, § 4.81(1). The areaway extended into the Division Avenue and Fountain Street rights-of-way. The areaway was constructed out of cement; at some point, a rubber membrane and brick pavers were placed over the top of the areaway.

In 2012, the city received complaints from pedestrians about tripping on the sidewalk located above the Keeler Building areaway. These complaints prompted the city to inspect the sidewalks and areaway. The inspection revealed that there was significant deterioration and damage within the areaway, and an engineering firm recommended that the sidewalks over the top of the areaway be closed off from the public. Following the inspection, the city notified Arath of the deficiencies and indicated that the areaway needed to be repaired. In 2014, after Arath did not comply with the city's request to commence repairs, the city filed a complaint and moved for injunctive relief to barricade the sidewalks outside the Keeler Building. The trial court granted the temporary restraining order, permitting the city to barricade the area.

In September 2016, after settlement talks fell through, the city filed a six-count, second-amended complaint. In Count I, the city sought declaratory relief to determine interest in real property pursuant to MCL 600.2932, alleging that it had superior rights to the rights-of-way and that the conditions of the areaway were interfering with the public's use of the rights-of-way. In Count II, the city alleged common-law trespass. In Count III, the city alleged that Arath was in violation of § 4.84 and § 4.85 of the Grand Rapids Code and requested declaratory relief, including an order requiring Arath to repair the areaway and the sidewalk and to reimburse the city the expense for maintaining the barricade. In Count IV, the city alleged that Arath violated the International Property Maintenance Code as incorporated in § 8.501 of the Grand Rapids Code. In Count V, the city alleged public nuisance, and in Count VI, the city alleged negligence.

Following discovery, both parties filed competing motions for summary disposition. The trial court entered an opinion and order granting partial summary disposition and denying summary disposition in favor of both parties. With respect to Count III, violation of the Grand Rapids Code, the trial court ordered that Arath was responsible to pay for the repairs to the areaway, including its concrete ceiling, and that the city was responsible to repair the paved brick sidewalk above the areaway. And the trial court granted summary disposition in favor of Arath on the remaining claims.

The parties' appeals followed.[1] Arath appeals the trial court's partial grant of summary disposition with respect to Count III, arguing that it should not be liable for any of the repairs. The city appeals the grant of summary disposition in favor of Arath with respect to Counts I, V, and VI.[2]

---

[1] The trial court dismissed all claims against Consumers Energy and neither of the parties challenges that ruling.

[2] The city acknowledges that it is not pursuing appeals with respect to Counts II or IV.

## II. STANDARDS OF REVIEW

"This Court reviews the grant or denial of summary disposition de novo to determine if the moving party is entitled to judgment as a matter of law." *Maiden v Rozwood*, 461 Mich 109, 118; 597 NW2d 817 (1999). The trial court granted summary disposition pursuant to MCR 2.116(C)(10). "In reviewing a motion brought under MCR 2.116(C)(10), we review the evidence submitted by the parties in a light most favorable to the nonmoving party to determine whether there is a genuine issue regarding any material fact." *Cuddington v United Health Servs, Inc*, 298 Mich App 264, 270; 826 NW2d 519 (2012). A motion brought under this subrule is properly granted if there are no issues of material fact and the moving party is entitled to judgment as a matter of law. *Smith v Globe Life Ins Co*, 460 Mich 446, 454-455; 597 NW2d 28 (1999).

Further, the resolution of the issues on appeal requires this Court to interpret the relevant provisions of the ordinance. This Court reviews de novo a trial court's interpretation and application of a municipal ordinance. *Bonner v Brighton*, 495 Mich 209, 221-224; 848 NW2d 380 (2014). "The rules governing the construction of statutes apply with equal force to the interpretation of municipal ordinances." *Gora v Ferndale*, 456 Mich 704, 711; 576 NW2d 141 (1998). "Thus, the primary goal of the interpretation of ordinances is to give effect to the intent of the legislative body." *Warren's Station, Inc v City of Bronson*, 241 Mich App 384, 388; 615 NW2d 769 (2000). This Court "must first examine the specific language used by the legislative body in the ordinance." *Id*. "If the plain and ordinary language is clear, then judicial construction is normally neither necessary nor permitted." *Id*. Furthermore, a court should not consult the testimony of the witnesses in construing the language of a statute or an ordinance. See *Mericka v Dep't of Community Health*, 283 Mich App 29, 39 n 3; 770 NW2d 24 (2009).

## III. ARATH'S APPEAL

Arath argues that the trial court erred in granting partial summary disposition in favor of the city with respect to Count III, violation of the Grand Rapids Code. Arath argues that the cement slab forming the ceiling of the areaway should be considered the "sidewalk," as opposed to the sidewalk merely being the surface layer of brick pavers.

It is undisputed that under the Grand Rapids Code, the city is responsible for maintaining, rebuilding, and repairing "sidewalks" within its jurisdiction. With respect to the maintenance of areaways, the Grand Rapids Code provides in relevant part as follows:

> All driveway approaches, retaining walls and *areaways*, hereinafter called improvements, within the City *shall be maintained by the owner of land adjacent to or abutting upon the improvement*. This maintenance shall include building, rebuilding and removing all obstacles, including snow and ice as required by Section 4.89. [Grand Rapids Code, tit IV, ch 52, § 4.84 (emphasis added).]

The Grand Rapids Code also includes enforcement provisions that permit the City Engineer to compel a property owner to repair an areaway that is in a state of disrepair. See Grand Rapids Code, tit IV, ch 52, § 4.85. The Grand Rapids Code provides the following relevant definitions:

(c) "Sidewalk" shall mean that portion of the street right-of-way designated for pedestrian travel.

(d) "Areaway" shall mean an extended basement of a building within the street right-of-way.

(e) "Areaway Sidewalk" shall mean a sidewalk constructed over an areaway. [Grand Rapids Code, tit IV, ch 52, § 4.81(1).]

The issue in this case involves determining what part of the rights-of-way is the "sidewalk" and what portion is the "areaway." Arath argues that the concrete slab that forms the top of the areaway should be considered the "sidewalk." In contrast, the city argues, and the trial court agreed, that only the brick pavers that overlay the concrete slab should be considered the sidewalk.

Here, the portion of the right-of-way near the Keeler Building on Division Avenue and Fountain Street that is "designated for pedestrian travel," the Grand Rapids Code definition of "sidewalk," is the brick pavers that overlay the subsurface including the areaway. The term "sidewalk" does not encompass anything underneath the portion "designed for pedestrian travel." Nothing in the definitions cited above supports defining the ceiling of the areaway to be included within the definition of "sidewalk." Therefore, the trial court correctly held that only the brick paver layer constitutes the "sidewalk" under the ordinance and that the concrete underneath is part of the "areaway."

Arath notes that the Grand Rapids Code includes a separate definition of "areaway sidewalk," which is defined to mean "a sidewalk constructed over an areaway." Grand Rapids Code, tit IV, ch 52, § 4.81(1). However, Arath's reliance on this definition is misplaced. Indeed, because the definition provides that an "areaway sidewalk" is a "sidewalk," it is clear that an "areaway sidewalk" is simply a "sidewalk" which happens to lie above an "areaway." In other words, regardless of a sidewalk's location, it retains its sidewalk status and an areaway retains its areaway status. As discussed above, the trial court properly defined the term "sidewalk" to include the brick pavers that overlay the subsurface in the right-of-way. Thus, the "areaway sidewalk" is the brick paver layer; it is not the areaway underneath the brick pavers. In short, the definition of "areaway sidewalk" does not undermine this analysis—it supports it.

Accordingly, the trial court did not err in granting partial summary disposition in favor of the city as to Count III as there was no genuine issue of material fact, and the city was entitled to judgment as a matter of law. Furthermore, because the court properly held that the brick pavers constituted a sidewalk (and therefore an areaway sidewalk), it correctly ordered the city to repair the brick paver sidewalk, and it also was correctly ordered Arath to repair the concrete areaway underneath. See Grand Rapids Code, tit IV, ch 52, § 4.84; Grand Rapids Code, tit IV, ch 52, § 4.85.

## IV. THE CITY'S CROSS-APPEAL

### A. COUNT I—PROPERTY INTEREST IN RIGHTS-OF-WAY

On cross-appeal, the city argues that the trial court erred in granting summary disposition in favor of Arath with respect to Count I. In Count I, the city brought an "action to determine interest in real property pursuant to MCL 600.2932." MCL 600.2932(1) states:

> Any person, whether he is in possession of the land in question or not, who claims any right in, title to, equitable title to, interest in, or right to possession of land, may bring an action in the circuit courts against any other person who claims or might claim any interest inconsistent with the interest claimed by the plaintiff, whether the defendant is in possession of the land or not.

The trial court explained as follows:

> In the case at hand, neither party disputes that the two streets were statutorily dedicated, and the evidence supports this fact. Based on this factual agreement and the statutory interpretation in [*2000 Baum Family Trust v Babel*, 488 Mich 136; 793 NW2d 633 (2010)], a genuine issue of material fact does not exist. The statutory dedication of Division Avenue and Fountain Street does not provide absolute title or rights in the property beyond those necessary to establish the public road and sidewalks. Statutory dedication does not strip Arath of their [sic] property rights. Therefore, a declaratory judgment declaring that Grand Rapids' claim to the areaway is superior to Arath's claim is not appropriate.

The city argues that it acquired interest in the rights-of-way including the ground underneath the rights-of-way because the rights-of-way were "statutorily dedicated public streets." The city contends that streets were statutorily dedicated pursuant to an 1827 territorial law, which provided as follows:

> That such maps or plats as required by this act to be recorded, shall particularly set forth and describe all public grounds within such town, by its boundaries, courses and extent, and whether it be intended for streets, alleys, commons or other public uses, and all lots intended for sale, by progressive numbers, and their precise length and width; and the maps made and acknowledged before a justice of the peace, a justice of the county court of the proper county where the town lies, or before a judge of the supreme court, and certified under the hand and seal of the judge or justices taking such acknowledgement, and recorded, shall be deemed a sufficient conveyance, to vest the fee of such parcels of land as therein expressed, named or intended to be for public uses, in the county in which such town lies, in trust, to and for the uses and purposes therein named, expressed or intended, and for no other use or purpose whatever. [2 Territorial Laws, Act of April 12, 1827, § 2, p 577.]

The Michigan Supreme Court recently addressed a similar argument, and a review of that case is warranted. In *Baum Family Trust*, the plaintiffs were property owners who owned lots

that fronted Lake Charlevoix but were separated from the water by Beach Drive, a public road dedicated to the Charlevoix County Road Commission (CCRC) under the 1887 plat act. *Baum Family Trust*, 488 Mich at 138-140. The plaintiffs filed suit to establish riparian rights. *Id*. at 138. The trial court held that the plaintiffs did not have riparian rights, and this Court affirmed, holding that "the [CCRC] was in 'no way' limited in the type of use it could make of the public road." *Id*. The Michigan Supreme Court granted leave to appeal and addressed the nature of "the property interest conveyed by the plat act" and how the dedication affected the plaintiffs' riparian rights. *Id*. at 144.

After surveying the law of dedication in general, the Court concluded that in resolving a dedication dispute, "*the use for which the dedication was made must determine the extent of the right parted with by the owner of the land and acquired by the public.*" *Id*. at 147 (quotation marks and citation omitted; emphasis added).

The Court then examined the "nature of the property interest conveyed by the 1887 plat act." *Id*. at 158. The Court explained:

> The operative language makes clear that the statute conveys a "fee" that is expressly limited by the terms of the dedication. That is, the fee is held "in trust to and for the uses and purposes *therein designated*, and for *no other use or purpose whatever.*" Accordingly, we first observe that the language used in the dedication of the plat is significant, indeed controlling, because no rights vest in the grantee beyond those that are "therein designed," and the land shall be used for "no other use or purpose whatever." Furthermore, we observe that, under this statute, a dedication is not presumed to be broad, requiring express words in the dedication to limit its scope. Rather, in all its versions, the statute has taken the opposite approach. The scope of the dedication is strictly limited to the words expressly conveyed, i.e., the purposes "therein designated" and "no other use or purpose whatever." [*Id*. at 159-160.]

The Court surveyed caselaw discussing the nature of the fee conveyed by the "early plat acts," and concluded:

> Through a conveyance by a platting statute, the county does not receive title in the nature of a private ownership . . . it acquires no beneficial ownership of the land and has no voice concerning the use . . . and it does not possess the usual rights of a proprietor, but rather takes title only to the extent that it could preclude questions which might arise respecting the public uses, other than those of mere passage . . . . Simply put, the law vests [the governmental entity] with *nominal* title.
>
> \* \* \*
>
> We pause at this word "nominal" to emphasize the obvious, i.e., that the property interest conveyed by these early platting statutes is a fee *in name only*. The nomenclature used to describe this particular property interest in the state of

-6-

Michigan for over a century has been a "base fee." [*Id*. at 163-164 (quotation marks and citations omitted).]

The Supreme Court concluded that this Court erred in holding that the plaintiffs' did not have riparian rights, reasoning that "[t]he lower courts' fundamental error was in their understanding of the property interest conveyed to the CCRC by the 1887 plat act." *Id*. at 173. The Court explained:

> The statute and our precedents dating back well over a century tell us all we need to know to decide this case. We know that the "fee" conveyed by the statute is held "in trust to and for the uses and purposes therein designated, and for no other use or purpose whatever." We know this fee conveys only "nominal title." We know that the statute does not convey "title in the nature of a private ownership." We know that the CCRC was not conveyed any rights that were not necessary to the use and purpose for which the street was dedicated. And we know that the nomenclature to describe this interest is a "base fee." [*Id*. at 173-174 (citations omitted).]

Therefore, it is apparent that the city here only obtained a "base" or "nominal" fee when the rights-of-way were dedicated pursuant to the territorial laws. Indeed, both the plat act in *Baum Family Trust* and the territorial law in this case utilize similar language and convey a "base fee" to the city that is "limited" in scope in that it is "limited by the terms of its dedication." *Id*. at 159-160. The territorial law in this case vested the city only with "nominal title," which is dissimilar to private ownership, and the city took title only "to the extent that it could preclude questions which might arise respecting the public uses, other than those of mere passage . . . ." *Id*. at 163 (quotation marks and citation omitted). The city's rights included the right to hold the rights-of-way in trust for the benefit of the public—i.e., for maintaining a road and sidewalk for public use.

Notwithstanding the rights conveyed by the dedication and by the rights set forth in the Grand Rapids Charter,[3] Arath, as an abutting property owner, "sustains a threefold relation to the street," including relation "[a]s owner of the reversionary interest to the center of the street." *Id*. at 152. Thus, the city's argument that the dedication stripped Arath of its property rights lacks merit. Arath's predecessors in interest acquired title to the Keeler Building and the accompanying areaway. Arath, therefore, has a viable property interest in the areaway.

Here, there is no genuine issue of material fact to show that the city is unable to maintain the public sidewalk absent a declaration that its interest is superior to that of Arath. In particular, the city does not indicate why it cannot maintain a public sidewalk after the trial court ordered Arath to repair the areaway in a manner that will allow the city to maintain the public sidewalk.

---

[3] "The right is hereby reserved to the City to use, control and regulate the use of its streets, alleys, bridges, and public places and the space above and beneath them." Grand Rapids Charter, tit VII, § 127.

As a result, the trial court did not err when it granted summary disposition in favor of Arath on this count.

### B. COUNT V—PUBLIC NUISANCE

In Count V, the city alleged that the areaway was a public nuisance and cited Grand Rapids Code, tit IX, ch 151, art 1, § 9.1, *et seq*. Under that chapter and article of the Code, it is apparent that the city is relying on the following section to sustain its nuisance claim:

> Where no other procedure is made specifically applicable by another provision of this Code, any property, structure, condition or activity prohibited by this Chapter, or declared a public nuisance elsewhere in this Code, may be abated by the City Manager, acting in the capacity of Director of Public Welfare, or the City Manager's designee, in accordance with the procedure set out in this Chapter. [Grand Rapids Code, tit IX, ch 151, art 1, § 9.3.]

The trial court concluded that because the city had an alternative remedy to abate the nuisance condition with respect to the areaway—i.e., Grand Rapids Code, tit IV, ch 52, art 1, § 4.85—§ 9.3 did not apply and Count V should therefore be dismissed. The trial court did not err.

Section 9.3 indicates that if "no other procedure is made specifically applicable," then the city has authority, though the City Manager or the City Manager's designee, to abate the nuisance. But Grand Rapids Code, tit IV, ch 52, art 1, § 4.85 contains a procedure that was specifically made to address areaways that constitute a nuisance:

> The City Engineer is hereby authorized and directed to order any person who owns property abutting to any driveway approach, retaining wall or areaway that is not in good repair, to build, rebuild or repair such improvements in accordance with the Grand Rapids Standard Construction Specifications as applicable.

Therefore, by its own terms, § 9.3 does not apply to the present circumstances because there is another procedure that was made to specifically address nuisances in areaways. Accordingly, the trial court properly granted summary disposition on this count in favor of Arath.

The city argues that remedies are severable under the Grand Rapids Code and cites the following provision:

> Any action taken by the City to abate any public nuisance under the provisions of this Article, or any other provision of the City Code, *shall not affect the right of the City to institute other legal or administrative proceedings against the person committing, creating, permitting or maintaining any public nuisance for violation of this Code* nor affect the imposition of the penalty or remedy prescribed or imposed for such violation. Upon application by the City to any court of competent jurisdiction, the court may order the public nuisance abated

and/or the violation or threatened violation restrained and enjoined. [Grand Rapids Code, tit IX, ch 151, art 1, § 9.4 (emphasis added).]

The city's reliance on this section is misplaced. As already noted, § 9.3 on its face does not apply when another portion of the Code applies to remedy a nuisance. Thus, even if § 4.85 and § 9.3 were to be fully and severally applied under § 9.4, § 9.3 would still be ineffectual. In other words, § 9.3 contains a condition precedent, and that condition is that "no other procedure is made specifically applicable by another provision of this Code." Here, that condition is not satisfied due to the specific procedure outlined in § 4.85 for areaways. In this case, § 9.4 simply allows for the city to file other causes of action against Arath; and the city did file such other actions as evidenced by its other counts, including claims for trespass and negligence.

## C. COUNT VI—NEGLIGENCE

Next, the city argues on cross-appeal that the trial court erred in granting summary disposition in favor of Arath on the claim of negligence. We agree.

"To establish a prima facie case of negligence, a plaintiff must prove the following elements: (1) the defendant owed the plaintiff a legal duty, (2) the defendant breached the legal duty, (3) the plaintiff suffered damages, and (4) the defendant's breach was a proximate cause of the plaintiff's damages." *Loweke v Ann Arbor Ceiling & Partition Co, LLC*, 489 Mich 157, 162; 809 NW2d 553 (2011). Arath moved for summary disposition on the negligence count, arguing that the city could not sustain its claim because Arath owed no duty to the city. The trial court agreed with Arath.

" 'Duty' is a legally recognized obligation to conform to a particular standard of conduct to protect others against an unreasonable risk of harm." *Laier v Kitchen*, 266 Mich App 482, 495-496; 702 NW2d 199 (2005) (quotation marks and citations omitted). The Michigan Supreme Court has explained:

> Actionable negligence presupposes the existence of a legal relationship between parties by which the injured party is owed a duty by the other, and such duty must be imposed by law. The duty may arise specifically by mandate of statute, or it may arise generally by operation of law under application of the basic rule of the common law, which imposes on every person engaged in the prosecution of any undertaking an obligation to use due care, or to so govern his actions as not to unreasonably endanger the person or property of others. This rule of the common law arises out of the concept that every person is under the general duty to so act, or to use that which he controls, as not to injure another. [*Clark v Dalman*, 379 Mich 251, 260-261; 150 NW2d 755 (1967).]

"Courts take a variety of approaches in determining the existence of a duty, utilizing a wide array of variables in the process. Frequently, the first component examined by the court is the foreseeability of the risk." *Buczkowski v McKay*, 441 Mich 96, 101; 490 NW2d 330 (1992). However, foreseeability is not dispositive and "other considerations may be, and usually are, more important." *Id*. The Michigan Supreme Court has previously explained:

> [T]he mere fact that an event may be foreseeable does not impose a duty upon the defendant to take some kind of action accordingly. The event which he perceives might occur *must pose some sort of risk of injury to another person or his property* before the actor may be required to act. Also, to require the actor to act, *some sort of relationship must exist between the actor and the other party which the law or society views as sufficiently strong* to require more than mere observation of the events which unfold on the part of the defendant. It is the fact of existence of this relationship which the law usually refers to as a duty on the part of the actor. [*Samson v Saginaw Prof Bldg, Inc*, 393 Mich 393, 406; 224 NW2d 843 (1975).]

In this case, the trial court held that Arath did not owe the city a duty pursuant to the Michigan Supreme Court's holding in *Bivens v Grand Rapids*, 443 Mich 391; 505 NW2d 239 (1993). However, *Bivens* is not dispositive in this case. The issue in *Bivens* involved a municipality's authority to impose a duty upon individual landowners pursuant to an ordinance. The Court held that the municipality did not have such authority because the ordinance conflicted with the municipality's charter. *Id*. at 399-400. Unlike in *Bivens*, in this case, the city is not attempting to impose a duty pursuant to an ordinance, but rather argues that Arath's duty is grounded in the common-law duty that landowners have to neighboring property owners. Moreover, the city is not attempting to recover for injuries sustained by unrelated third parties. Rather, to determine whether Arath has a duty requires an inquiry into the unique relationship that Arath, as the owner of the areaway, has with the city.

It is undisputed that "[a]t common law, a landowner is under no obligation to repair and maintain an abutting public sidewalk." *Id*. at 395. However, the issue in this case involves whether the owner of a structure in the subsurface underneath a public sidewalk owes a duty of care to the municipality that operates public infrastructure above the areaway. Having reviewed whether, under the "basic rule of the common law," Arath had "an obligation to use due care, or to so govern his actions as not to unreasonably endanger the person or property of others," *Clark*, 379 Mich at 260-261, we conclude that Arath had a duty of care with respect to maintenance of the subsurface under the rights-of-way.

First, the nature of the relationship between Arath and the city was "sufficiently strong." See *Samson*, 393 Mich at 406. Arath owned a structure that lies within the subsurface of a public right-of-way on which the city maintains a sidewalk for public use. The sidewalk abuts a public road. The parties therefore possess interests in property that are in such close proximity that misuse of either property poses a foreseeable risk of harming the other party's property. Indeed, the integrity of Arath's structure is directly related to whether the city can operate the public sidewalk. In this respect, Arath's relationship to the city is much different than a property owner who owns property merely abutting a public sidewalk. Arath and the city have property interests that are literally vertical to each other. Arath's interest lies directly underneath the city's interest, and therefore, the manner in which Arath maintains its property has far greater capacity to harm the city's interest and vice versa.

Second, the potential harm that Arath may cause the city by failing to exercise care in maintaining the areaway is reasonably foreseeable. It does not require expert testimony to realize that the failure to properly maintain the areaway, which lies directly beneath the city's

-10-

sidewalk, and hence supports the sidewalk, could reasonably lead to damage to said sidewalks. Indeed, this type of situation is analogous to the situation where adjoining landowners have a duty to subjacently support the neighboring land.

> The owner of the surface of land is entitled to have one's land remain in its natural state subjacently and has a right to subjacent support for such land from adjoining land. Neither the owner of the surface nor the owner of the subjacent rights can lawfully destroy, interfere with, or damage the right of the other. Thus, a party who removes the subjacent support is absolutely liable for damage caused by subsidence. [1 Am Jur 2d, Adjoining Landowners, § 78, p 1017 (citations omitted).]

Moreover,

> [w]hile some authority holds that the right to subjacent support applies only to the surface in its natural state or condition at the time of severance of ownership, *it also has been held that the duty of the subjacent owner is not merely to support the surface in a naked condition but rather for the uses to which the surface is naturally adapted*. The right to subjacent support is not altered by the use to which the surface owner puts one's land or whom the surface owner allows upon it. Other authority holds that a subjacent owner or lessee is bound to support buildings and other structures which were in existence at the time of the creation of the interest in the subjacent stratum. [1 Am Jur 2d, Adjoining Landowners, § 78, pp 1018-1019 (emphasis added).]

In this case, it is undisputed that the rights-of-way were dedicated before the Keeler Building was constructed. The Keeler Building was constructed with an areaway that intruded into the public rights-of-way. Therefore, we conclude that Arath's predecessors in interest assumed a duty to support the surface of the rights-of-way for the use to which the surface was naturally adapted—i.e., a pedestrian sidewalk. Arath assumed that duty upon acquisition of title to the property.

While the issues of whether Arath breached its duty and whether the breach caused the alleged damages are not before this Court at this time, we conclude that the trial court erred when it found that Arath did not owe a duty to the city. Consequently, the trial court erred when it granted summary disposition in favor of Arath on this count.

## V. CONCLUSION

We affirm the trial court's order granting partial summary disposition in favor of the city as to Count III, and we also affirm the trial court's order granting summary disposition in favor of Arath on Counts I and V. However, we reverse the trial court's order granting summary disposition in favor of Arath as to Count VI.

Affirmed in part, reversed in part, and remanded for further proceedings consistent with this opinion. We do not retain jurisdiction. No taxable costs, as no party prevailed in full. MCR 7.219.

/s/ Christopher M. Murray
/s/ Jane E. Markey
/s/ Jonathan Tukel